PEOPLE v FISHER

Docket No. 30792. Submitted October 18, 1978, at Detroit.—Decided December 5, 1978.

Harold H. Fisher was convicted of two counts of second-degree murder, Recorder's Court of Detroit, Robert L. Evans, J. The defendant appeals, raising the following issues:

1. Did error occur when the court failed to order the defendant to undergo a forensic examination prior to trial, upon the defendant's raising a defense of insanity?

2. Was error committed in allowing a forensic center psychologist to testify as a "court" witness?

3. Did the trial court err in allowing the psychologist's testimony regarding the defendant's confession of the crime?

4. Was the defendant denied the effective assistance of counsel where defense counsel presented the defendant's half-brother as his only expert witness?

*Held:*

1. The applicable statute does not preclude the ordering of the forensic examination after trial has commenced. The failure to order a forensic examination for the defendant prior to trial was not reversible error.

2. Although there were no provisions applicable at the time

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 48-54, 65-69, 365.

29 Am Jur 2d, Evidence §§ 354, 575, 576.

31 Am Jur 2d, Expert and Opinion Evidence §§ 85-90.

Validity and construction of statutes providing for psychiatric examination of accused to determine mental condition. 32 ALR2d 434.

Modern status of rules as to burden and sufficiency of proof of mental irresponsibility in criminal case. 17 ALR3d 146.

[2] 29 Am Jur 2d, Evidence §§ 250, 269.

75 Am Jur 2d, Trial §§ 62, 145, 146.

81 Am Jur 2d, Witnesses § 657.

[3] 81 Am Jur 2d, Witnesses §§ 3, 620.

[4] Mental subnormalty of accused as affecting voluntariness or admissibility of confession. 69 ALR2d 348.

[5] 21 Am Jur 2d, Criminal Law §§ 315, 318-323.

Incompetency of counsel chosen by accused as affecting validity of conviction. 74 ALR2d 1390.

of trial which allowed the trial court to call a "court" witness, there was no prejudice to the defendant under the circumstances of the case. Further, if a new trial were ordered the trial court would be able to call such a witness as a "court" witness because the Michigan Rules of Evidence, now in effect, allow such a procedure. Any error on this issue was harmless.

3. The psychologist's testimony regarding the defendant's confession was not improper because the testimony was probative only to the issue of the defendant's insanity at the time of the offense and was not considered relative to the defendant's guilt and because this was a bench trial with no jury.

4. The decision of defense counsel to call the defendant's half-brother, who was a psychologist, as the only expert witness for the defense was a conscious choice of trial strategy and did not deprive the defendant of the effective assistance of counsel.

Affirmed.

1. CRIMINAL LAW—DEFENSE OF INSANITY—FORENSIC EXAMINATION—STATUTES.

It is not necessarily reversible error for the trial court, in a case where a defendant has raised the defense of insanity, to order a forensic examination for the defendant after trial has begun, rather than prior to trial (MCL 768.20a; MSA 28.1043[1]).

2. WITNESSES—REBUTTAL WITNESSES.

A rebuttal witness is one called upon to contradict, repel, explain, or disprove evidence produced by an opposing party.

3. WITNESSES—CRIMINAL LAW—EVIDENCE—MICHIGAN RULES OF EVIDENCE—"COURT'S" WITNESS.

Prior to the adoption of the Michigan Rules of Evidence, a trial court could not determine a witness to be the court's witness by simply calling the witness *sua sponte;* however, it was harmless error for the court in a criminal case to so call an expert psychiatric witness, prior to the adoption of the MRE, where 1) the witness's report was made immediately available to defense counsel, 2) the court deliberately gave defense counsel an extra day adjournment to have the defendant further examined in order to counteract the witness's testimony, and 3) there was no unfairness to the defendant in the way the trial court handled the matter of a forensic examination and where, if a new trial were to be granted, the testimony of the witness would now be available under the MRE which are now in effect (MRE 706).

4. Witnesses—Criminal Law—Forensic Psychologist—Defend-
    ant's Confession to Psychologist—Admissibility of Evidence
    —Statutes.

    Testimony by a forensic center psychologist wherein the witness
    related a defendant's confession to him regarding one of two
    murder counts was properly admitted as evidence where 1) the
    testimony was not considered relative to the defendant's guilt,
    2) the trial was a bench trial, and 3) the testimony was
    probative only to the issue of the insanity of the defendant at
    the time of the offense (MCL 768.20a[5]; MSA 28.1043[1][5]).

5. Criminal Law—Assistance of Counsel—Effective Assistance—
    Standard.

    The standard to determine whether a defendant had effective
    assistance of counsel in a criminal trial is that defense counsel
    must perform at least as well as a lawyer with ordinary
    training and skill in the criminal law and must conscientiously
    protect his client's interest, undeflected by conflicting considera-
    tions.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward R. Wilson,* Principal
Attorney, Appeals, and *Paul C. Louisell,* Assistant
Prosecuting Attorney, for the people.

*Raymond E. Willis, P.C.,* for defendant on ap-
peal.

Before: Beasley, P.J., and R. B. Burns and J. H.
Vander Wal,* JJ.

Beasley, P.J. Charged with two counts of murder
in the first degree in the killing of a woman and a
child, defendant was found guilty in a bench trial
of two counts of second-degree murder contrary to
MCL 750.317; MSA 28.549. After being sentenced
to life imprisonment on each count, defendant

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

appeals as of right, raising five issues for consideration.

## I.

Did error occur when the court failed to order defendant to undergo a forensic examination prior to trial?

The 1975 amendments to the Code of Criminal Procedure set forth the statutory procedure to be followed when a defendant asserts an insanity defense. Defendant filed notice within the statutory period; however, not until the third day of trial did the court notice that defendant had not been ordered to undergo a forensic examination.[1] The trial judge then recessed trial and ordered defendant to undergo such an examination. Copies of the forensic center report were sent to the prosecuting and defense attorneys immediately upon completion.

MCL 768.20a; MSA 28.1043(1) reads, in pertinent part, as follows:

"Sec. 20a. (1) If a defendant in a felony case proposes to offer in his defense testimony to establish his insanity at the time of an alleged offense, the defendant shall file and serve upon the court and the prosecuting attorney a notice in writing of his intention to assert the defense of insanity not less than 30 days before the date set for the trial of the case, or at such other time as the court directs.

"(2) Upon receipt of a notice of an intention to assert the defense of insanity, a court shall order the defendant to undergo an examination relating to his claim of insanity by personnel of the center for forensic psychia-

---

[1] But neither defense counsel nor the assistant prosecutor brought the fact to the court's attention prior to trial. The usual procedure would be for defense counsel to prepare the order of referral to the Center for Forensic Psychiatry, have it approved as to form by the prosecutor and then to submit it to the court for entry.

try for a period not to exceed 30 days. When the defendant is to be held in jail pending trial, the center, in its discretion, may perform the examination in the jail, or may notify the sheriff to transport the defendant to the center for the examination, and the sheriff shall return the defendant to the jail upon completion of the examination. When the defendant is at liberty pending trial, on bail or otherwise, the defendant shall make himself available for the examination at the place and time established by the center. If the defendant, after being notified by the center of the place and time of the examination, fails to make himself available for the examination, the court may, without a hearing, order his commitment to the center."

Defendant contends that this language requires the forensic examination to be conducted prior to trial. On its face, the statute does not preclude a trial court from ordering a forensic examination after trial has begun. Of course, it is better practice for the Center for Forensic Psychiatry to conduct its examination and evaluation prior to trial. But, under the circumstances of this case, we decline to find reversible error in ordering the examination and evaluation after trial had begun.

## II.

Was error committed in allowing the forensic center psychologist to testify as a "court" witness?

MCL 768.21(2); MSA 28.1044(2) provides that failure of the prosecution to file a notice of rebuttal of the insanity defense precludes the admission of rebuttal evidence. As a result of the prosecution's failure to file the requisite notice, defendant objected to the testimony of the forensic center psychologist, Dr. Jackson. Defendant claims that the trial judge's calling the psychologist a "court

witness" was merely a method of circumventing the statute.

A rebuttal witness is one called upon to contradict, repel, explain, or disprove evidence produced by the defense. See, *People v Martin.*[2]

Appellant was told on July 2, 1976, that Dr. Jackson's testimony would be heard six days later. The court then committed itself to hearing that testimony before any knowledge of what the testimony might reveal. It precluded the prosecution from calling anyone else in rebuttal should Dr. Jackson's testimony be unfavorable to them. MCL 768.20a(7); MSA 28.1043(1)(7) gives the judge discretion to allow the prosecutor to file late notice of a rebuttal witness. It states that the prosecutor shall file the names "not later than five days before the trial of the case, *or at such other time as the court directs"*. Clearly, the court could have let the prosecutor call Dr. Jackson as a rebuttal witness, but chose not to do so.

The new Michigan Rules of Evidence were not in effect at the time of trial.[3] Subsequent to March 1, 1978, when the rules took effect, MRE 706 provides that the court could appoint its own expert witness, by its own motion. Nothing comparable to this section was in force at the time. Therefore, even though we have determined Dr. Jackson to be a "court" rather than a "rebuttal" witness, under case law in effect at the time of this trial, the court could not determine a witness to be its own by simply calling the witness *sua sponte.*

*People v Dickerson*[4] held unconstitutional a state statute requiring the court to appoint an expert witness in homicide cases. The Court, prior to the enactment of MRE 706, said:

---

[2] 75 Mich App 6; 254 NW2d 628 (1977).

[3] MRE 101-1102, effective March 1, 1978.

[4] 164 Mich 148; 129 NW 199 (1910).

"The power of selecting and appointing witnesses who shall, after appointment, acquaint themselves with the matter in controversy, and testify concerning the same, is in no sense a judicial act, and, if exercised by the court in accordance with the mandate of section 3, would entirely change the character of criminal procedure, and would seriously endanger, if not absolutely destroy, those safeguards which our Constitution has so carefully enacted for the protection of the accused. The most cursory examination of section 3 will disclose its vice. The court is directed to appoint one or more suitable, disinterested persons to investigate and testify. This appointment is to be made without notice to either the prosecuting attorney or the accused. The reasons which impel the court to make the selection are not of record and can never be known. The names of the selected experts cannot be indorsed upon the indictment by the prosecuting attorney as required by law, for he himself is as ignorant of their identity as is the accused. The right of one accused of crime to know in advance the names of the witnesses who will testify against him and to examine into their character, means of knowledge, etc., in order that he may properly prepare his defense, is a right as ancient as our criminal jurisprudence." 164 Mich at 153–154.

Although we find that Dr. Jackson could not have been called by the court, we find the error to be harmless under the circumstances of this case. A copy of Dr. Jackson's report was made immediately available to defense counsel. The court deliberately gave defense counsel an extra day adjournment to have appellant further examined in order to counteract Dr. Jackson's testimony. No adjournment was requested in order for defendant to have further preparation time; there was no unfairness to defendant in the way the trial court handled this matter of a forensic examination. Further, if we were to grant a new trial, under MRE 706 now in effect, the testimony of Dr. Jackson as a "court" witness would now be available.

### III.

Did the trial court err in allowing the psychologist's testimony regarding defendant's confession of the crime?

During the cross-examination of the psychologist for the defense, the prosecuting attorney asked if defendant had told the psychologist during the mental examination "that he shot and killed a person known as Linda Anderson Cook". Over defense counsel's objection, the witness was allowed to answer. Later, the psychologist from the forensic center related defendant's confession to him regarding one of the murder counts.

In *People v Martin,*[5] the Supreme Court decision in 1971 and not the 1977 Court of Appeal's decision in an unrelated case of the same title referred to previously in this opinion, the potential for self-incrimination in the examining psychiatrist's testimony where an insanity defense was asserted was discussed. The Court cited *Parkin v State,*[6] wherein the Court said, "Like the decision to testify in one's behalf and risk incrimination during cross-examination, the decision to plead insanity and tender proof is not a pathway without stones".[7]

In affirming defendant's conviction in *Martin,* the reasoning of *United States v Albright*[8] was adopted. That reasoning states:

" 'The manifest purpose of the examination in this case was, and the proper objective of a mental examination in any criminal case where a defendant's sanity is in issue should be, to obtain knowledge not about facts

---

[5] 386 Mich 407; 192 NW2d 215 (1971).

[6] 283 So 2d 817, 821 (Fla, 1970).

[7] *Martin, supra,* p 426.

[8] 388 F2d 719 (CA 4, 1968).

concerning defendant's participation in the criminal acts charged, but about facts concerning a defendant which are themselves material to the case. *Cf. United States v Wade,* 388 U.S. 218, 219, 222, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). The purpose is not to prove by evidence wrested from a defendant whether he is guilty as charged but, rather, to prove whether a defendant possesses the requisite mentality to be guilty as charged, assuming that his guilt is otherwise established, or whether, legally, he cannot be held criminally responsible, irrespective of what other proof may establish he has done.' " *Martin, supra,* p 428.

*Martin* is not in conflict with MCL 768.20a(5); MSA 28.1043(1)(5) which states:

"(5) Statements made by the defendant to personnel of the center for forensic psychiatry or to any independent examiner during an examination shall not be admissible or have probative value in court at the trial of the case on any issues other than his mental illness or insanity at the time of the alleged offense."

In the case at bar, the testimony of the psychologist was not considered relative to defendant's guilt. There was no jury. This was a bench trial. The testimony was probative only to the issue of the insanity of the defendant at the time of the offense and, therefore, did not violate MCL 768.20a(5); MSA 28.1043(1)(5).

## IV.

Was defendant denied the effective assistance of counsel where defense counsel presented defendant's half-brother as his only expert witness?

The evidence of defendant's guilt was overwhelming. The only issue to be resolved in the case was defendant's mental state during the com-

mission of the crime. To support defendant's claim of insanity, Dr. Fisher, a psychologist and defendant's half-brother, was called as the only expert by defense counsel. Prior to calling this witness, the trial court indicated that it would appoint an unrelated psychiatrist if defense counsel so desired. Defense attorney chose not to do so. From a tactical standpoint, the defense believed that defendant's brother would have more of an impact upon the court. He stated that a psychiatrist with a working knowledge of defendant's background would be more valuable than a psychiatrist who would be meeting the defendant for the first time.

Later, in rendering its decision, the court indicated that the evaluation of Dr. Jackson from the forensic center proved to be the testimony adopted by the court rather than that of defendant's half-brother.

We find that the decision of defense counsel to present Dr. Fisher as the sole expert witness was a conscious choice of trial strategy. The Court, in *People v Garcia,*[9] adopted the reasoning of *Beasley v United States.*[10] *Beasley* held:

"Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

In *People v Mays,*[11] the Court addressed the issue of a defense attorney's judgment that one trial tactic would be more successful than another and said: "This Court will not substitute its judgment for that of trial counsel on matters of trial strategy".

[9] 398 Mich 250, 264; 247 NW2d 547 (1976).
[10] 491 F2d 687, 696 (CA 6, 1974).
[11] 64 Mich App 453, 457; 236 NW2d 513 (1975).

We do not know what facts were revealed to trial counsel within the ambit of the attorney-client privilege. Neither do we know whether trial counsel had other psychiatric advice regarding defendant's mental condition which led him to believe his client's best chance lay in not risking additional psychiatric evaluation.

We neither permit second-guessing trial counsel, nor do we speculate what the outcome of the case at bar might have been if additional expert witnesses had been introduced by defendant. We find, under the *Beasley-Garcia* standard, that defense attorney's trial strategy did not deprive defendant of the effective assistance of counsel.

Other issues raised by defendant are without merit. Affirmed.