IN THE MATTER OF RICKS

Docket No. 91550. Submitted January 6, 1988, at Detroit. Decided
     March 21, 1988.

The prosecutor filed a petition in the Wayne County Probate
     Court, Juvenile Division, alleging that respondent, Steven
     Ricks, committed an act the nature of which constituted the
     felony of assault with intent to commit murder. The petition
     requested the court to take jurisdiction of respondent, who was
     then sixteen years old. The petition was authorized and both
     the petitioner and respondent's counsel requested a psychologi-
     cal evaluation of respondent. The juvenile court referee recom-
     mended ordering an evaluation to be performed by the Wayne
     County Clinic for Child Study. Respondent's attorney filed a
     notice of insanity defense and requested that respondent be
     referred to the Center for Forensic Psychiatry for evaluation.
     The presiding judge, Y. Gladys Barsamian, denied the request
     for evaluation at the adult forensic center, but ordered evalua-
     tion by the Clinic for Child Study. Respondent's additional
     request for an independent psychiatric forensic evaluation was
     granted. Following an adjudicatory hearing, at which the clini-
     cal psychologist who conducted the independent evaluation of
     respondent testified that respondent suffered from a disorder
     which fell within the legal definition of mental illness and the
     psychologist from the Clinic for Child Study testified that
     respondent could differentiate between right and wrong, the
     juvenile court referee found that respondent, while suffering
     from mental illness, was not insane. The referee than found
     respondent guilty but mentally ill and ruled that he came
     within the provisions of the juvenile code. Respondent was then
     committed to the Boys Training School. Judge Barsamian
     thereafter denied respondent's petition for review ruling that:
     (1) the court did not err in failing to follow the statute govern-

REFERENCES

Am Jur 2d, Criminal Law §§ 46 *et seq.*; 56 *et seq.*

Am Jur 2d, Expert and Opinion Evidence § 87.

Admissibility of expert testimony as to whether accused had specific
     intent necessary for conviction. 16 ALR4th 666.

Qualification of nonmedical psychologist to testify as to mental
     condition or competency. 78 ALR2d 919.

ing procedure when an insanity defense is raised, because the insanity defense does not apply in juvenile cases; (2) the guilty but mentally ill verdict does not apply in juvenile cases, but the referee did not intend respondent to come within the statute pertaining thereto; and (3) the referee had adequate information upon which to make his dispositional decision. Respondent appealed.

The Court of Appeals *held:*

1. It is unnecessary to determine whether the insanity defense is applicable to juvenile proceedings. If the defense is available, there was no error at the adjudicatory proceedings. The respondent presented evidence regarding his sanity, argued the question, and received a ruling. The evidence was sufficient to support a finding of respondent's legal sanity. If the defense is not available, reversal is still not warranted. Respondent was not denied due process since his theory that he lacked the requisite intent to commit the charged offense was offered and rejected.

2. Assuming, arguendo, that the insanity defense applies: (A) respondent's rights were not violated by the decision to have the Clinic for Child Study perform an evaluation and by the allowance of testimony by the clinic's psychologist on the issue of criminal responsibility; (B) it was harmless error for the petitioner to fail to file a notice of rebuttal in regard to the psychologist's rebuttal testimony.

3. The referee did not err in taking jurisdiction in this case.

4. Judge Barsamian correctly found that the referee's decision to take jurisdiction did not actually amount to a statutory "verdict" of guilty but mentally ill.

5. The referee did not abuse his discretion in committing respondent to the Department of Social Services.

Affirmed.

L. P. BORRELLO, J., concurred in the result but wrote a separate opinion to note that he would affirmatively hold that the insanity defense is applicable to proceedings in juvenile court.

1. CRIMINAL LAW — INTENT.

One need not raise the question of his sanity in order to claim lack of evidence of his requisite intent to commit a charged offense.

2. EVIDENCE — EXPERT WITNESSES — PSYCHOLOGISTS.

Psychologists are included among those persons competent to testify on the issue of sanity.

3. EVIDENCE — EXPERT WITNESSES — APPEAL.

   The determination whether witnesses are sufficiently qualified to render expert opinions rests within the sound discretion of the trial court; the trial court's decision will be reversed on appeal only for an abuse of discretion.

4. TRIAL — REBUTTAL TESTIMONY — NOTICE.

   The purpose of the notice requirement regarding the filing of a notice of rebuttal is to prevent surprise at trial; the failure to file such notice may be found to be harmless error where the complaining party had actual notice that the rebuttal testimony would be offered, including knowledge of the content thereof (MCL 768.20a, 768.21; MSA 28.1043[1], 28.1044).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division Research, Training and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for petitioner.

Juvenile Defender (by *William E. Ladd*), for respondent.

Before: MacKENZIE, P.J., and M. J. KELLY and L. P. BORRELLO,* JJ.

MacKENZIE, P.J. On July 31, 1985, petitioner filed a petition in the probate court alleging that respondent committed an act the nature of which constituted the felony of assault with intent to commit murder, MCL 750.83; MSA 28.278. The petition requested the court to take jurisdiction of respondent, apparently pursuant to MCL 712A.2(a)(1); MSA 27.3178(598.2)(a)(1), which provides:

Except as otherwise provided in this section, the juvenile division of the probate court shall have:
(a) Exclusive original jurisdiction superior to and

* Circuit judge, sitting on the Court of Appeals by assignment.

regardless of the jurisdiction of any other court in proceedings concerning any child under 17 years of age found within the county:

(1) Who has violated any municipal ordinance or law of the state or of the United States.

At the time the petition was filed, respondent was sixteen years old. He was detained at the Wayne County Youth Home following the alleged assault.

When the petition was authorized, both petitioner and respondent's counsel requested a psychological evaluation of respondent. The juvenile court referee recommended ordering such an evaluation to be performed by the Wayne County Clinic for Child Study. On August 15, 1985, respondent's attorney filed a notice of insanity defense, accompanied by a request that respondent be referred to the Center for Forensic Psychiatry for evaluation. The presiding judge denied the request for evaluation at the adult forensic center, but ordered evaluation by the Clinic for Child Study. Additionally, respondent was granted his request for an independent psychiatric forensic evaluation.

An adjudicatory hearing was conducted on September 24, October 9, and October 10, 1985. Following petitioner's case in chief, respondent presented the expert testimony of clinical psychologist Dr. William Nixon, who conducted the independent evaluation of respondent. He testified that respondent suffered from a paranoia disorder and that this disorder fell within the legal definition of mental illness. Further, in Nixon's opinion, at the time of the assault respondent was unable to resist his homicidal impulse and was unable to see the wrongfulness of his action. Clinic for Child Study psychologist Dr. Charles Rooney testified as petitioner's rebuttal expert witness. According to Rooney, respondent suffered from a schizoid personal-

ity disorder but was able to differentiate between right and wrong.

On October 15, 1985, the juvenile court referee found that respondent, while suffering from mental illness, was not insane. The referee then found respondent guilty but mentally ill and ruled that he came within the provisions of the juvenile code. Disposition immediately followed. Respondent was committed to Boys Training School, which would "attempt to work with this young man for purposes of getting him medication, as well as any type of therapy that could be brought in from Hawthorne [sic] Center by a therapist."

Respondent filed a petition for review on October 21, 1985. Judge Y. Gladys Barsamian denied the petition on February 19, 1986. Responding to several issues raised by respondent, Judge Barsamian ruled that: (1) the court did not err in failing to follow MCL 768.20a; MSA 28.1043(1), governing procedure when an insanity defense is raised, because the insanity defense does not apply in juvenile cases; (2) the guilty but mentally ill verdict, MCL 768.36; MSA 28.1059, does not apply in juvenile cases, but the referee did not intend respondent to come within that statute; and (3) the referee had adequate information upon which to make his dispositional decision. Respondent now appeals from each of these determinations as of right. We affirm.

Respondent contends that Judge Barsamian erred in concluding that the insanity defense is inapplicable to juvenile proceedings. We find it unnecessary to address the issue on these facts. If, as respondent maintains, the defense is available in juvenile court, there was no error at the adjudicatory proceeding. Respondent presented evidence regarding his sanity, argued the question, and received a ruling. We agree with the referee and

the presiding judge that the evidence was sufficient to support a finding of respondent's legal sanity. The evidence of respondent's actions both before and immediately after the assault strongly suggested that he was able to conform his conduct to the law and that he appreciated the wrongfulness of his actions. If, on the other hand, Judge Barsamian correctly concluded that the insanity defense has no application in juvenile proceedings, reversal still would not be warranted. Judge Barsamian's ruling did not deny respondent due process. As respondent's counsel stated more than once at the February 19 hearing, the essence of respondent's theory of the case was that he lacked the requisite intent to commit the charged offense. Obviously one need not raise the question of sanity in order to claim lack of evidence of intent. Here, respondent offered his theory and it was rejected. Judge Barsamian's ruling did not deprive respondent of his theory.

Assuming, arguendo, that the insanity defense applies in juvenile proceedings, respondent argues that under MCL 768.20a; MSA 28.1043(1) the probate court erred in ordering his evaluation at the Wayne County Clinic for Child Study rather than the Center for Forensic Psychiatry. Respondent cites no cases and we have found none directly on point. Analogous to the instant case, however, is *People v Lucas,* 393 Mich 522, 527-528; 227 NW2d 763 (1975). In *Lucas,* the Court fashioned a remedy for when the trial court fails to comply with procedural requisites surrounding the determination of competency to stand trial. The Court stated:

As we said in [*People v Blocker,* 393 Mich 501; 227 NW2d 767 (1975)], failure to follow a statute or court rule respecting competency determination

does not ipso facto entitle a defendant to a new trial. Evidence substantiating incompetency-in-fact must establish that there is a *violation of rights* before a new trial will be ordered. [*Lucas, supra,* p 528. Emphasis added.]

Here, respondent's rights were not violated by the decision to have the Clinic for Child Study perform an evaluation. As Judge Barsamian noted, respondent needed mental health treatment as soon as possible, not the delay of many months which would result from referral to the Center for Forensic Psychiatry. Moreover, the Center for Forensic Psychiatry is an adult facility; both the juvenile code and the court rules governing the juvenile division of the probate court contemplate that juvenile detainees will not be exposed to adult detainees. Finally, while there may exist a difference of opinion as to whether the Clinic for Child Study was better equipped to evaluate respondent, that difference of opinion does not amount to a violation of rights. There was no error.

Again assuming, arguendo, that the insanity defense and the procedures set forth at MCL 768.20a; MSA 28.1043(1) apply to juvenile proceedings, respondent further argues that the court erred in permitting Dr. Rooney to testify as an expert on the issue of criminal responsibility. We disagree. In *People v Hawthorne,* 293 Mich 15; 291 NW 205 (1940), five justices agreed that psychologists are included among those competent to testify on the issue of sanity. Accord: *People v Drossart,* 99 Mich App 66; 297 NW2d 863 (1980), lv den 410 Mich 892 (1981). *People v Hardesty,* 139 Mich App 124; 362 NW2d 787 (1984), lv den 424 Mich 878 (1986), app dis — US —; 106 S Ct 3269; 91 L Ed 2d 560 (1986), upon which respondent relies, dealt with the qualifications of a particular psy-

chologist and cannot be read as disqualifying all clinical psychologists as experts on the issue of sanity.

Whether witnesses are sufficiently qualified to render expert opinions rests within the sound discretion of the trial court, and that court's decisions will be reversed only for an abuse of discretion. *People v Beckley,* 161 Mich App 120, 124-125; 409 NW2d 759 (1987), citing *People v Barr,* 156 Mich App 450; 402 NW2d 489 (1986). In the instant case, Dr. Rooney testified that he was a licensed psychologist, that he had been employed at the Clinic for Child Study since 1980, that he had evaluated approximately 250 young men "for [the] purpose of psychiatric evaluation" and had testified in court forty to fifty times regarding evaluation of youngsters who had appeared in juvenile court, and that he was a professor of psychology at Wayne State University from 1973 to 1979. Although this was his first examination on criminal responsibility, Dr. Rooney was aware of the requirements of the law and had considered the reports and evaluations of three psychiatrists, Dr. Harold Wright of Hawthorn Center, Dr. Dexter Fields of Northland Clinic, and Dr. Barry Miller, when evaluating respondent. As Judge Barsamian noted, the Clinic for Child Study specializes in dealing with children in contrast to the Center for Forensic Psychiatry which deals with adults. Moreover, as Judge Barsamian noted, respondent is hardly in the position to challenge petitioner's expert since respondent was given an opportunity for independent evaluation and, rather than choosing a forensic psychiatrist, he also chose a clinical psychologist. We find no abuse of discretion.

Once more assuming, arguendo, that the insanity defense and the procedures set forth in the

Code of Criminal Procedure apply to juvenile proceedings, respondent also contends that the court erred in permitting Dr. Rooney's rebuttal testimony since petitioner did not file a notice of rebuttal. See MCL 768.20a; MSA 28.1043(1) and MCL 768.21; MSA 28.1044. Respondent is correct that petitioner did not file a notice of rebuttal and that the statutory sanction for failure to comply with the notice requirement is the exclusion of the rebuttal evidence. We do not agree, however, that the error mandates reversal. The purpose of the notice requirement is to prevent surprise at trial. *People v Williams,* 107 Mich App 798, 800; 310 NW2d 246 (1981), rev'd on other grounds 413 Mich 940 (1982). In the instant case, respondent had actual notice not only of the fact that Dr. Rooney would be testifying but also of the content of his testimony. Respondent's expert, Dr. Nixon, testified that he had read Dr. Rooney's report. Counsel for respondent stated on the record that he had a copy of Dr. Rooney's report. Thus, we find the error harmless. The Supreme Court's reversal of *Williams, supra,* does not compel a different result. The Supreme Court's reason for reversal of *Williams* was not that the trial court permitted testimony in violation of MCL 768.21; MSA 28.1044, but rather that the "trial court erred by calling as its own expert a witness who was, in fact, a prosecution witness." 413 Mich 940.

Respondent also argues that the guilty but mentally ill statute has no applicability in a juvenile proceeding. Because Judge Barsamian agreed with respondent on this point, we decline to review the question. Furthermore, the record supports the judge's observation:

When a case comes to this court basically the verdict is does this child come within the jurisdic-

tion of the court. And we usually say it comes
within the provisions of the Code. So we don't go
into all the other kinds of verdicts that might be
handed down by an adult criminal court.

I think what I heard Referee Weberman say on
that occasion, even though he might have verbal-
ized it as guilty but mentally ill, I think what he
said is that he found that the respondent was
mentally ill. I don't think there was a question
about that. All the professionals said that this
young man was mentally ill. But what he was
saying was that even though he was mentally ill
at the time he committed this crime or this of-
fense, he did have the prerequisite [sic] intent.

And as we all know, while people may be men-
tally ill today, they are not mentally ill twenty-
four hours a day. They can make wills and do
many other things because mental illness is of
such a nature that it comes and it goes. And in
fact if I recollect correctly, it was indicated by the
professional this child could act quite normally
and not be detected as being severely mentally ill.

So basically what Referee Weberman was say-
ing, yes, he's mentally ill but at the time he
committed this crime he had the intent. And I
think that given [the] testimony [that] was pre-
sented to him that that was not an inappropriate
finding on his part. That there was testimony
beyond a reasonable doubt that all the elements of
the offense with [sic] which this child was found
guilty had been established. And I don't see that I
have to send it back to him for a new verdict. I
having listened to the tape, I think all the evi-
dence was there. I think, as the lower court has
indicated, yes, respondent was mentally ill but he
was sane at the time he committed the offense.

The referee did not err in taking jurisdiction in
this case.

Respondent also argues that he was denied a
fair hearing because he was not on notice of the
possibility of a guilty but mentally ill verdict at

the adjudicatory hearing and that the verdict constituted an impermissible compromise. Because we agree with Judge Barsamian that the referee's decision to take jurisdiction of the minor did not actually amount to a statutory "verdict" of guilty but mentally ill, we need not address these issues.

Finally, respondent claims that the referee abused his discretion in committing respondent to the Department of Social Services without full inquiry into the grounds for disposition. Again, we defer to the well-reasoned ruling of Judge Barsamian and adopt it as our own:

> I think what happened in this case was that through all the pretrial conferences and the reports, and in fact the hearing as it progressed through a variety—a number of days, I think that I would agree with the referee that he did not need to continue this matter, and there is no prerequisite in the law or the court rules that require that. He felt on that occasion that he had more than ample evidence in terms of what needed to be done here, and that's what he did.
>
> Now, I have to say, you know, you go into resources and all those issues about whether there was a compromise, et cetera. The reality is that because we committed this young man to the Michigan Department of Social Services does not mean he's precluded from treatment for his mental problem. I think what the Department of Mental Health was saying, yes, this youngster has a problem and is mentally ill, but he needs to be treated, but we do not have the facilities that are physically secure to prevent him from escaping or leaving the premises, and so we do not have a physical plant with which to maintain this youngster.
>
> However, what the referee found was that there are resources in the juvenile justice system by commitment to the Department that would enable this youngster to be securely detained as well as

receive treatment for his mental condition, and it was on that basis that he then committed to the Department. So that having been found guilty he then made disposition which he felt was appropriate in light of the condition of this child, and also in light of the concern for public safety. Therefore, I think that the information and the argument that you have made would not cause me to say that the referee acted inappropriately in this case. . . .

Affirmed.

M. J. KELLY, J., concurred.

L. P. BORRELLO, J. *(concurring)*. While I concur in the result, I would affirmatively hold that due process mandates the application of the insanity defense to proceedings in juvenile court. The majority does not address this issue directly; however, the majority correctly points out that in this case, irrespective of what the probate judge held, the respondent did present evidence regarding his sanity, argued the question, and received a ruling. Thus the respondent was not deprived of his due process defense. Despite the fact that in this case there was no violation of respondent's due process rights, I believe this Court should go on record that in Michigan the insanity defense is applicable to proceedings in juvenile court.

The defense of insanity has long been a part of the common law of this state. *People v Girard,* 96 Mich App 594, 597; 293 NW2d 639 (1980). Support for the conclusion that due process mandates the application of the insanity defense in juvenile proceedings can be found in decisions of the United States Supreme Court.

In *In re Gault,* 387 US 1; 87 S Ct 1428; 18 L Ed 2d 527 (1967), the United States Supreme Court

found that "[t]he essential difference between Gerald's case (the juvenile involved) and a normal criminal case is that safeguards available to adults were discarded in Gerald's case. The summary procedure as well as the long commitment was possible because Gerald was 15 years of age instead of over 18." *Id.* at 29. The Court then stated:

> A proceeding where the issue is whether the child will be found to be "delinquent" and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. [*Id.* at 36.]

Three years after *Gault,* the United States Supreme Court decided *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970). The Court held:

> In sum, the constitutional safeguard of proof beyond a reasonable doubt is as much required during the adjudicatory stage of a delinquency proceeding as are those constitutional safeguards applied in *Gault*—notice of charges, right to counsel, the rights of confrontation and examination, and the privilege against self-incrimination. We therefore hold, in agreement with Chief Judge Fuld in dissent in the Court of Appeals, "that, where a 12-year-old child is charged with an act of stealing which renders him liable to confinement for as long as six years, then, as a matter of due process . . . the case against him must be proved beyond a reasonable doubt." 24 NY2d at 207; 247 NE2d at 260. [*Id.* at 368.]

Decisions of this Court indicate that procedural questions for juveniles are determined by analogy

to procedures for adults. In *In the Matter of
Sylvester Wilson,* 113 Mich App 113; 317 NW2d
309 (1982), lv den 419 Mich 870 (1984), the ques-
tion before the Court was whether, at the adjudica-
tive phase, the juvenile court may accept, over the
prosecutor's objection, a valid plea in confession to
a lesser included offense to the offense charged in
the petition. *Id.* at 120. This Court found that the
holding in *Genesee Prosecutor v Genesee Circuit
Judge,* 391 Mich 115; 215 NW2d 145 (1974), i.e.,
that a circuit judge does not possess supervisory
power over the prosecutor, applied to juvenile
proceedings. *Wilson, supra* at 121. This Court
stated:

> We believe this holding is applicable to the
> present case. Juvenile delinquency proceedings are
> not criminal or adversary in nature. MCL 712A.1;
> MSA 27.3178(598.1), JCR 1969, 1.3. Nonetheless,
> the procedures for invoking juvenile court jurisdic-
> tion in cases where a child is alleged to have
> committed a criminal act are closely analogous to
> the adversary criminal process. It is the prosecutor
> who generally initiates the formal proceeding by
> filing a petition. See JCR 1969, 4.1, MCL 764.27;
> MSA 28.886. Proper notice to the affected parties
> is required. MCL 712A.12; MSA 27.3178(598.12),
> JCR 1969, 7.2. In cases where the child is taken
> into custody and not released to his parents or
> guardian, there must be a preliminary hearing
> within 48 hours. JCR 1969, 4.2. At the preliminary
> hearing, the court must, *inter alia,* read to the
> child the allegations in the complaint or petition
> and explain the nature of the proceeding. JCR
> 1969, 4.2(B)(3)-(5). Functionally speaking, the pro-
> cedure at the preliminary hearing corresponds
> closely to the initial arraignment in the instance
> of an adult offender.
>
> Where a request for waiver of juvenile court
> jurisdiction is filed, the court must conduct a
> hearing to determine whether there is probable
> cause to believe that the child committed the acts

charged in the petition. MCL 712A.4(3); MSA
27.3178(598.4)(3), JCR 1969, 11.1(A). If the waiver
request is denied, the matter proceeds to the adju-
dicative phase, at which the child has a right to a
jury trial. JCR 1969, 8.1(A). The rules of evidence
for a criminal proceeding and the standard of
proof beyond a reasonable doubt apply. JCR 1969,
8.3(A). With the exception of the right to a public
trial, the usual protections accorded adults in
criminal prosecutions govern delinquency proceed-
ings.

After a careful review of the statutes and court
rules, we are convinced that, for purposes of decid-
ing the issue at bar, the respective roles of the
prosecutor and the court are functionally equiva-
lent to adult criminal prosecutions. The juvenile
court does not possess supervisory power over the
prosecutor. Accordingly, we hold that the juvenile
court may not, without the prosecutor's concur-
rence, accept a plea in confession to a lesser in-
cluded offense to the offense charged in the peti-
tion. The people, represented by the prosecutor,
are entitled to a determination of juvenile court
jurisdiction based on the acts charged in the peti-
tion. [*Id.* at 121-123.]

Similarly, in *In the Matter of Chapel,* 134 Mich
App 308, 314; 350 NW2d 871 (1984), a case of first
impression, this Court found that *People v Coles,*
417 Mich 523; 339 NW2d 440 (1983), the case
which "sets a standard for sentence review," ap-
plies to juvenile criminal matters because "noth-
ing in *Coles* exempts any court where the power to
sentence exists." In *In the Matter of Belcher,* 143
Mich App 68; 371 NW2d 474 (1985), lv den 424
Mich 863 (1985), the question was whether due
process prohibits revocation of a juvenile's proba-
tion unless a violation of a condition of probation
is proven beyond a reasonable doubt rather than
by a preponderance of the evidence. This Court
noted:

> Although proceedings in juvenile court need not conform with all the requirements of a criminal trial, essential requirements of due process and fair treatment must be met. *In re Gault,* 387 US 1, 30-31; 87 S Ct 1428; 18 L Ed 2d 527 (1967). Proof beyond a reasonable doubt is an essential requirement of due process and fair treatment in the adjudicative phase of a proceeding in which a juvenile is charged with an act which would be a crime if committed by an adult and faces possible confinement in a state institution. *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970). [*Belcher, supra* at 71.]

This Court then cited *Gagnon v Scarpelli,* 411 US 778; 93 S Ct 1756; 36 L Ed 2d 656 (1973), wherein the Court stated that a probationer was not entitled to all the protections of a criminal trial because he had already been convicted of the crime. *Belcher, supra* at 71. This Court stated that in Michigan the standard of proof in adult probation revocation proceedings is proof by a preponderance of the evidence and there was no reason to impose a higher burden of proof in juvenile revocation proceedings, the status of a juvenile probationer being analogous to that of an adult probationer. *Id.* at 71-72.

MCR 5.922, effective January 1, 1988, states in pertinent part:

> (B) Notice of Defenses; Rebuttal.
> (1) Within 21 days after the juvenile has been given notice of the date of trial, but no later than 7 days before the trial date, the juvenile or the juvenile's attorney must file a written notice with the court and prosecuting attorney of the intent to rely on a defense of alibi, *insanity, or diminished capacity,* or a defense of mental illness negating an element of the alleged offense. The notice shall include a list of the names and addresses of defense witnesses.

(2) Within 7 days after receipt of notice, but no later than 2 days before the trial date, the prosecutor shall provide written notice to the court and defense of an intent to offer rebuttal to the above-listed defenses. The notice shall include names and addresses of rebuttal witnesses.

(3) Failure to comply with subrules (1) and (2) may result in the sanctions set forth in MCL 768.21; MSA 28.1044. [Emphasis added.]

I would hold that the insanity defense is applicable to juvenile proceedings.