*In re* CAREY

Docket No. 219592. Submitted March 14, 2000, at Lansing. Decided May 19, 2000, at 9:05 A.M.

The Alpena County Prosecutor filed in the Juvenile Division of the Alpena Probate Court, now part of the Family Division of the Alpena Circuit Court, a petition charging David A. Carey with being a juvenile delinquent for engaging in conduct that would be second-degree criminal sexual conduct had he been an adult. The court concluded after a competency hearing that the respondent was not competent to stand trial because he could not understand the nature and object of the proceedings. The court, Douglas A. Pugh, J., nevertheless subsequently issued an opinion ruling that the issue of competency was not relevant to the adjudicative phase of a juvenile proceeding. The respondent appealed.

The Court of Appeals *held*:

The right not to be tried while incompetent is as fundamental to due process in juvenile proceedings as it is in criminal proceedings involving adults. In the absence of a court rule or statute that expressly controls the procedure for making competency determinations in juvenile proceedings, the provisions of the Mental Health Code dealing with competency determinations in criminal proceedings, MCL 330.2020 *et seq.*; MSA 14.800(1020) *et seq.*, may serve as a guide in juvenile proceedings. Because it is possible that a juvenile, merely because of youthfulness, would be unable to understand the proceedings with the same degree of comprehension an adult would, competency evaluations should be made in light of juvenile, rather than adult, norms.

Reversed and remanded.

Infants — Juvenile Delinquency Proceedings — Adjudicative Phase — Competency — Due Process.

A juvenile has a due process right not to be subjected to the adjudicative phase of a delinquency proceeding while mentally incompetent; the provisions of the Mental Health Code governing competency determinations in criminal prosecutions of adults should be used as guidelines in evaluating the competency of a juvenile; competency evaluations of juveniles should be made in light of juvenile,

rather than adult, norms (US Const, Ams V, XIV; Const 1963, art 1, § 17; MCL 330.2020 *et seq.*; MSA 14.800[1020] *et seq.*).

*Dennis P. Grenkowicz*, Prosecuting Attorney, and *Robert A. Reuther*, Chief Assistant Prosecutor, for the petitioner.

*Silver & Elder* (by *David S. Elder*), for the respondent.

Before: BANDSTRA, C.J., and CAVANAGH and ZAHRA, JJ.

BANDSTRA, C.J. In this appeal we consider whether a court must determine the competency of a juvenile accused of an offense when a claim is raised that the juvenile is incompetent to stand trial in the adjudicative phase of a delinquency proceeding. We hold that the Due Process Clause requires this determination. We further hold that, in making this determination, the provisions of the Mental Health Code applicable to determinations of adult competency for criminal trials should be employed. We reverse and remand for further proceedings.

## FACTS

A petition was filed in the Alpena County Probate Court, Juvenile Division, now part of the Family Division of the Alpena Circuit Court, alleging that respondent had committed second-degree criminal sexual conduct, MCL 750.520c; MSA 28.788(3). Shortly after the petition was filed, the prosecutor moved that respondent be evaluated concerning both his competency to stand trial and his criminal responsibility. The trial court granted this motion. Respondent was examined by Jason Stentoumis, a psychologist at

Northeast Michigan Community Health.[1] After this examination was performed, counsel for respondent moved for a competency hearing, claiming that respondent had a due process right to a hearing and requesting that the practice for determining competency in adult criminal cases be followed.

The court held a competency hearing on January 17, 1997. Cary Bautel, who was employed as a psychologist by the Alpena-Montmorency-Alcona Educational Service District, testified that he had performed a psychological evaluation on respondent. The tests had indicated that respondent had a full scale IQ of 52. Bautel had classified respondent as being in the lower range of the classification "educable mentally impaired." Bautel's last dealings with respondent had been in 1994. The trial court did not allow Bautel to give testimony regarding respondent's competency to stand trial. However, it allowed Bautel to testify regarding respondent's ability to function within the legal system. Bautel testified that in his opinion, respondent would understand very little of the proceedings.

Just as with Bautel, the trial court did not allow Stentoumis to testify directly about respondent's competency to stand trial. However, it allowed Stentoumis to testify about respondent's current level of functioning. According to Stentoumis, respondent's full scale IQ was 65, which placed him in the lowest one percentile of people his age. Respondent could understand simple language, but abstract matters

---

[1] Apparently, the Center for Forensic Psychiatry, which performs competency evaluations for adults accused of criminal offenses, see MCL 330.2026(1); MSA 14.800(1026)(1), had refused to perform the evaluation on respondent.

were difficult for him to comprehend. In addition, he had short-term memory problems. However, respondent was capable of carrying on a conversation that was goal-oriented. Stentoumis believed that respondent was aware he had done something wrong because, as Stentoumis put it, "[h]is mother was angry with him and [respondent] stated he wouldn't do it again because his Mom was upset with him." Stentoumis was not sure whether respondent would be able to assist counsel.

After the close of testimony, the trial court offered its doubts about whether competency determinations were appropriate for the juvenile court. Nonetheless, on May 15, 1998, the court concluded that respondent was not competent to stand trial because he could not understand the nature and object of the proceedings. However, on December 31, 1998, the court issued an opinion in which it ruled that the issue of competency was not relevant to the adjudicative phase of a juvenile proceeding.[2] It is from this ruling that respondent appeals.

Respondent contends that he has a due process right not to be subjected to the adjudicative phase of a delinquency proceeding while incompetent to stand trial and a right to have his competency determined. A claim of incompetency to stand trial, and the right to a competency determination, implicates constitutional due process protections. *People v Newton (After Remand)*, 179 Mich App 484, 487; 446 NW2d

---

[2] In concluding that the issue of competency was not relevant, the trial court cited *In re Ricks*, 167 Mich App 285; 421 NW2d 667 (1988). In *Ricks*, this Court did not reach the issue whether the insanity defense was available at the adjudicative phase of a delinquency proceeding. *Id.* at 289. We conclude that *Ricks* does not control the outcome of this case.

487 (1989). Issues of constitutional law are reviewed de novo. *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998); *People v Walker*, 234 Mich App 299, 302; 593 NW2d 673 (1999).

QUESTIONS PRESENTED

No cases in Michigan have addressed the due process right of a juvenile to be determined competent as a prerequisite to the adjudicative phase of a delinquency proceeding. Further, Michigan has no statutory procedures expressly dealing with competency in the context of juvenile proceedings. While there are Mental Health Code procedures for determining the competency of adult criminal defendants, see MCL 330.2020 *et seq.*; MSA 14.800(1020) *et seq.*, proceedings held in the family division of the circuit court, which include delinquency proceedings, are not considered to be criminal proceedings. MCL 712A.1(2); MSA 27.3178(598.1)(2). Thus, the questions before this Court are (1) whether due process demands that a competency determination be made before a questionably competent juvenile is subjected to the adjudicative phase of a delinquency proceeding, and (2) if such a right exists, whether the provisions of the Mental Health Code for competency determinations apply to juvenile competency proceedings. We conclude that (1) juveniles have a due process right not to be subjected to the adjudicative phase of juvenile proceedings while incompetent, and (2) although the Mental Health Code provisions for competency determinations by their terms apply only to defendants in criminal proceedings, they can serve as a guide for juvenile competency determinations.

GENERAL LEGAL BACKGROUND

Although juvenile proceedings are not considered adversarial in nature, they are closely analogous to the adversary criminal process. *In re Wilson*, 113 Mich App 113, 121; 317 NW2d 309 (1982). Proceedings in a juvenile court need not conform with all the requirements of a criminal trial; however, essential requirements of due process and fair treatment must be met. *In re Gault*, 387 US 1, 30-31; 87 S Ct 1428; 18 L Ed 2d 527 (1967); *In re Belcher*, 143 Mich App 68, 71; 371 NW2d 474 (1985). Among the essential requirements of due process and fair treatment are the requirement that the allegations in a delinquency petition be proved beyond a reasonable doubt, *In re Winship*, 397 US 358, 368; 90 S Ct 1068; 25 L Ed 2d 368 (1970), the right to notice of the charges, *Gault*, *supra* at 34, the right to counsel, *id.* at 41, the right to confrontation and cross-examination, *id.* at 57, the privilege against self-incrimination, *id.* at 55, and the right not to be placed in jeopardy twice, see *Breed v Jones*, 421 US 519, 529-531; 95 S Ct 1779; 44 L Ed 2d 346 (1975). However, not all due process rights conferred on adults accused of a crime are applied to juveniles in delinquency proceedings, primarily because of the special nature of the proceedings. See, e.g., *McKeiver v Pennsylvania*, 403 US 528, 545; 91 S Ct 1976; 29 L Ed 2d 647 (1971). (Due process does not require a trial by jury in juvenile cases.).

The conviction of an individual when legally incompetent violates due process of law. *Newton*, *supra* at 487; US Const Ams V, XIV; Const 1963 art 1, § 17. The protection afforded by the Due Process Clause requires that a court sua sponte hold a hearing

regarding competency when any evidence raises a bona fide doubt about the competency of the defendant. *People v Ray*, 431 Mich 260, 270, n 5; 430 NW2d 626 (1988).

> Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so. [*Riggins v Nevada*, 504 US 127, 139-140; 112 S Ct 1810; 118 L Ed 2d 479 (1992) (Kennedy, J. concurring), citing *Drope v Missouri*, 420 US 162, 171-172; 95 S Ct 896; 43 L Ed 2d 103 (1975).]

DUE PROCESS AND JUVENILE COMPETENCY DETERMINATIONS

Although this state has not addressed the issue of competency determinations in juvenile proceedings, a number of other jurisdictions have concluded that competency, if properly raised, must be determined by the court. In *James H v Superior Court of Riverside Co*, 77 Cal App 3d 169, 174; 143 Cal Rptr 398 (1978), the California Court of Appeals held that juveniles had a due process right to be afforded a hearing when a question arose with respect to competency. The court reasoned that an incompetent juvenile would be unable to cooperate with counsel, thus denying the juvenile the effective assistance of counsel. *Id.* The court also held that the trial court had the inherent power to conduct a competency hearing; thus, it reasoned, the lack of statutory procedures did not preclude holding a hearing. *Id.* at 175. The Supreme Court of Louisiana concluded that the right of an incompetent juvenile not to be subjected to

juvenile proceedings was "fundamental" and "essential," and analogized this right to the right not to be tried in absentia. *In re Causey*, 363 So 2d 472, 476 (La, 1978). In *In re Two Minor Children*, 95 Nev 225, 230-231; 592 P2d 166 (1979), the Nevada Supreme Court similarly found a due process right to a competency hearing. Its holding was based on Justice Black's concurring opinion in *Gault, supra* at 61, as well as *James H, supra*. The Minnesota Supreme Court held, as the Louisiana Supreme Court had earlier, that the right of an incompetent juvenile not to be subjected to juvenile proceedings was fundamental. *In re Welfare of SWT*, 277 NW2d 507, 511 (Minn, 1979). In *State ex rel Dandoy v Superior Ct*, 127 Ariz 184, 187; 619 P2d 12 (1980), the Arizona Supreme Court reached a similar conclusion, relying again on the right to effective counsel as the basis for concluding that a juvenile must be able to confer with counsel. The District of Columbia Court of Appeals found that the juvenile system under review did not adequately protect the right of an incompetent juvenile not to be tried. *In re WAF*, 573 A2d 1264, 1266 (DC App, 1990). The Georgia Court of Appeals found that "a want of competence renders [the rights recognized in *Gault* and its progeny] meaningless." *In re SH*, 220 Ga App 569, 571; 469 SE2d 810 (1996). The Washington Court of Appeals, in addressing the procedure to be followed for competency proceedings involving juveniles, recognized without discussion the right of juveniles to a competency determination. *State v EC*, 83 Wash App 523, 527-528; 922 P2d 152 (1996). The Ohio Court of Appeals found that the right not to be tried while incompetent is "as fundamental in juvenile proceedings as it is in criminal trials of adults." *In re*

*Williams*, 116 Ohio App 3d 237, 241; 687 NE2d 507 (1997). It appears that all courts that have spoken on this issue have recognized the right of juveniles to a competency determination.

We find the reasoning presented in these cases to be persuasive. The purpose of the trial phase of a juvenile proceeding is to determine whether the juvenile comes within the jurisdiction of the court. MCR 5.903(A)(19). The trial court's basis for jurisdiction is provided by statute. MCL 712A.2; MSA 27.3178(598.2). The court may take jurisdiction only if the juvenile has violated a law. MCL 712A.2(a)(1); MSA 27.3178(598.2)(a)(1). The trial phase of a delinquency proceeding, then, is nothing more than a fact-finding mission to determine whether the juvenile has in fact violated any law, thus authorizing the court to exercise jurisdiction over the juvenile. Even though, as previously mentioned, juvenile proceedings are not considered adversarial, they have many of the trappings of criminal proceedings; the petition is filed by the prosecutor, notice is required, there must be a preliminary hearing, which resembles an arraignment in criminal proceedings, and the functions of the prosecutor and court are the equivalent to their functions in a criminal proceeding. *Wilson, supra* at 121-122. As noted earlier, due process requires that a juvenile must be afforded the right to counsel during these proceedings. *Gault, supra* at 41. This right to counsel means little if the juvenile is unaware of the proceedings or unable to communicate with counsel because of a psychological or developmental disability. Cf. *Cooper v Oklahoma*, 517 US 348, 368; 116 S Ct 1373; 134 L Ed 2d 498 (1996); *Dusky v United States*, 362 US 402, 402; 80 S Ct 788; 4 L Ed 2d 824 (1960)

(common-law standard for determining competency is whether defendant has sufficient present ability to consult with lawyer with a reasonable degree of rational understanding and whether defendant has a rational as well as factual understanding of the proceedings against him). We conclude, as have many other jurisdictions, that the right not to be tried while incompetent is as fundamental in juvenile proceedings as it is in the criminal context.

There is no rule or statute of procedure that expressly controls the procedure for making a competency determination in juvenile cases. Respondent has argued that the procedure to be followed in juvenile cases may be found in MCR 6.125. However, by its terms, this rule applies "in a criminal case" or in "criminal proceedings." See, e.g., MCR 6.125(A) and (B). As we have noted previously, juvenile cases are not criminal proceedings. MCL 712A.1(2); MSA 27.3178(598.1)(2). Further, MCR 5.901 disallows the use in juvenile proceedings of rules that are not in subchapter 5.900 unless specifically provided by that subchapter and no such provision is made for the use of MCR 6.125.

We recognize that this Court held in *In re McDaniel*, 186 Mich App 696, 698; 465 NW2d 51 (1991), that the provisions of the Code of Criminal Procedure could apply in juvenile cases if not in conflict with the court rules or the Probate Code. However, that decision cannot justify the use of MCR 6.125 here. The holding in *McDaniel* was based on MCR 1.104, which provides that rules of practice set forth in statutes that are not in conflict with any of the court rules are effective. MCR 6.125 is a court rule, not a statute, and *McDaniel* is inapposite.

The Mental Health Code also contains procedural provisions dealing with competency determinations. MCL 330.2020(1); MSA 14.800(1020)(1) establishes the presumption that a criminal defendant is competent to stand trial and articulates the standard for competency. The issue of competency may be raised by either party or by the court. MCL 330.2024; MSA 14.800(1024). If there is a showing that the defendant may be incompetent, the court must order the defendant to undergo an examination by either the Center for Forensic Psychiatry or another facility officially certified by the Department of Mental Health to perform competency examinations. MCL 330.2026; MSA 14.800(1026). The facility performing the examination must submit a report to the court containing its findings and opinion regarding competency. MCL 330.2028(2); MSA 14.800(1028)(2). The court must then conduct a hearing. MCL 330.2030; MSA 14.800(1030). The code also contains provisions dealing with the procedure to be followed if the defendant is found incompetent. MCL 330.2031-330.2044; MSA 14.800(1031)-14.800(1044).

We do not conclude that the Mental Health Code establishes the procedure that must be followed in juvenile cases. By its terms, the Mental Health Code applies to "a defendant to a criminal charge." MCL 330.2020(1); MSA 14.800(1020)(1); see also MCL 330.2026; MSA 14.800(1026), MCL 330.2044; MSA 14.800(1044). Again, juvenile proceedings are not considered criminal. MCL 712A.1(2); MSA 27.3178(598.1)(2). We must presume that the Legislature was aware of the meaning of the language it used in the Mental Health Code. *People v Ramsdell*, 230 Mich App 386, 392; 585 NW2d 1 (1998). The

inclusion of language specific to criminal defendants compels the conclusion that MCL 330.2020 *et seq.*; MSA 14.800(1020) *et seq.* was intended to govern competency determinations in criminal cases only, not in juvenile cases.

Nonetheless, as we have already determined, there is a due process right not to be subjected to the adjudicative phase of a delinquency proceeding while not competent. It is thus incumbent on us to provide some direction to the trial courts in making this important determination. Further, the competency provisions of the Mental Health Code do not appear to conflict with any applicable court rules and, under *McDaniel, supra,* they could be applied in the juvenile context.

We believe that the Mental Health Code provisions for competency determinations can provide a useful guide[3] for the trial courts in this context. As summarized above, they provide a standard of competency and a process by which questions of competency can

---

[3] Even though we conclude that the Mental Health Code should be used as a guide for the conduct of juvenile competency determinations, the express language of the code may limit the specific procedures to be used. For instance, the code directs the trial court to order a defendant alleged to be incompetent to undergo an examination by personnel of the Institute for Forensic Psychiatry or another facility certified by the Department of Mental Health to perform examinations relating to the issue of incompetence to stand trial. MCL 330.2026(1); MSA 14.800(1026)(1). However, the institute has limited statutory powers, which do not appear to include the examination of juveniles who have not been charged as an adult with a crime. MCL 330.1128; MSA 14.800(128). Nonetheless, the provisions call for examination by a facility certified by the Department of Mental Health to conduct competency examinations. Any such facilities could be used, providing that they are found to be qualified to determine the competency of juveniles involved in delinquency proceedings. The trial courts should apply the Mental Health Code in making juvenile competency determinations to the extent possible, recognizing that its provisions may sometimes need to be liberally construed or modified for application in this context.

be raised and determined. We hold that, in the absence of other applicable rules or statutes, these provisions should be used to assure that the due process rights of a juvenile are protected.

In reaching this conclusion, however, we further note that it is possible that a juvenile, merely because of youthfulness, would be unable to understand the proceedings with the same degree of comprehension an adult would. *Causey, supra* at 476. See Grisso, The Competence of Adolescents as Trial Defendants, 3 Psych, Pub Pol'y & L 3, 14 (1997). Accordingly, we further hold that, in juvenile competency hearings, competency evaluations should be made in light of juvenile, rather than adult, norms. *Williams, supra* at 242. A juvenile need not be found incompetent just because, under adult standards, the juvenile would be found incompetent to stand trial in a criminal proceeding.[4]

We reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

---

[4] By outlining the procedure to be followed, we do not intend to usurp the authority of our Supreme Court or the Michigan Legislature. See Const 1963, art 6, § 5. We have discussed the procedure for conducting competency hearings for juveniles only because of the lack of any court rule or statute to guide the trial courts. We invite our Supreme Court to promulgate rules of procedure for juvenile competency determinations, and our Legislature to enact any statutory provisions it deems necessary.