686 N.W.2d 280 (2004)
262 Mich.App. 101
In the Matter of James Eugene BLACKSHEAR, Minor.
People of the State of Michigan, Petitioner-Appellee,
v.
James Eugene Blackshear, Respondent, and
Van Buren Community Mental Health Authority, Intervenor-Appellant.
In the Matter of Richard Kyle Chastain, Minor.
People of the State of Michigan, Petitioner-Appellee,
v.
Richard Kyle Chastain, Respondent, and
Van Buren Community Mental Health Authority, Intervenor-Appellant.
In the Matter of James Paul Keeton, Minor.
People of the State of Michigan, Petitioner-Appellee,
v.
James Paul Keeton, Respondent, and
Van Buren Community Mental Health Authority, Intervenor-Appellant.
Docket Nos. 240556, 240665, 240666.
Court of Appeals of Michigan.
Submitted March 30, 2004, at Grand Rapids.
Decided May 18, 2004, at 9:20 a.m.
Released for publication July 21, 2004.
*281 Juris Kaps, Prosecuting Attorney, and Keith A. Robinson, Assistant Prosecuting Attorney, Paw Paw, for the petitioner.
Miller, Canfield, Paddock and Stone, P.L.C. (by Scott R. Sikkenga and Kara K. Zech), Kalamazoo, for Van Buren Community Mental Health Authority.
Before: MARKEY, P.J., and MURPHY and TALBOT, JJ.
TALBOT, J.
In these consolidated cases, we granted intervenor leave to appeal to determine whether the trial court may judicially admit a juvenile, found to be incompetent to stand trial, to the care, treatment, and supervision of a community mental health authority pursuant to the Mental Health Code, MCL 330.1100 et seq., and whether the court was allowed to direct a county community mental health authority to arrange *282 and pay for the competency evaluations of the juvenile respondents in these cases. We conclude that the court lacked the necessary authority with respect to both issues. Accordingly, we reverse the relevant orders of the trial court.

I. Facts and Procedural History
In three separate juvenile proceedings, the Van Buren Community Mental Health Agency (CMHA) intervened to challenge the trial court's orders that directed the CMHA to pay for forensic evaluations to determine whether the juvenile respondents, diagnosed with mental retardation,[1] were competent to stand trial. The CMHA also intervened to challenge, in Docket Nos. 240665 and 240666, the court orders that included forensic evaluations to determine whether the respondent juveniles were legally insane at the time they allegedly committed the charged offenses. In Docket No. 240556, the CMHA challenged the order to judicially admit the juvenile, who was incompetent to stand trial, to the care, treatment and supervision of the CMHA.

A. Docket No. 240556
In Docket No. 240556, the twelve-year-old respondent was charged with seventeen separate criminal offenses ranging from theft of bicycles to larceny of a check. Prior evaluations of the juvenile indicated that he was mentally impaired, and his guardian ad litem and attorney moved the trial court for a forensic examination to determine his competency to stand trial. The court approved the motion and appointed a board-certified forensic examiner, who determined that the juvenile had a full scale IQ between fifty-one and sixty-two of performance, ranking him below the first percentile of the population. The forensic examiner found the juvenile to be mentally retarded and severely developmentally disabled, unable to understand the charges against him, and unable to assist in his own defense. The examiner opined that the juvenile would remain incompetent for the rest of his life.
At the competency hearing, the trial court found the juvenile incompetent to stand trial and that the juvenile's condition would not change within the next fifteen months. The court concluded that the juvenile required intensive mental health treatment under a foster care arrangement. Accordingly, the court committed the juvenile to the care and supervision of CMHA. The court also ordered the CMHA to pay for the forensic evaluation of the juvenile.
Contrary to the court order, the CMHA performed a screening evaluation of the juvenile and determined that hospitalization was not appropriate and returned the juvenile to his parents. However, in line with the court's directives, the CMHA enrolled the family in a "wraparound" treatment program and it subsequently placed the juvenile in foster care. The CMHA then intervened in the case to challenge the trial court's order on the ground that the court lacked legal authority to commit the juvenile to the care of CMHA or order it to pay for the forensic evaluation. The court upheld the order. It noted a gap in the Mental Health Code with respect to mentally retarded juvenile respondents who were found incompetent to stand trial. Specifically, the court expressed its frustration over the fact that the code was silent with respect to whether a mentally retarded juvenile who was found incompetent to stand trial could be judicially admitted to mental health care when the *283 juvenile's condition was not expected to improve or change within fifteen months of the incompetency determination. The court conceded that its order violated Chapter 5 of the code that governed the civil admission and discharge procedures for the developmentally disabled, but it reasoned the instant case involved criminal matters, not a civil admission. The court explained that it followed the directives of In re Carey[2] to liberally construe the Mental Health Code to protect the due process rights of the juvenile when the Legislature had not enacted separate codes for the civil and the criminal treatment of incompetent juveniles. The court concluded that to read the Mental Health Code otherwise would mean that the court had the power only to release the juvenile to his parents.

B. Docket No. 240665
In Docket No. 240665, the fifteen-year old respondent had been involved with the family division of the Van Buren Circuit Court since the age of twelve years. At the time of the instant proceedings, he was waiting adjudication on a charge of larceny in a building. The juvenile's school records indicated that he was mentally retarded, and his attorney and guardian ad litem moved the trial court for a forensic examination to determine whether he was competent to stand trial and whether he was legally insane at the time he allegedly committed larceny in a building. The trial court ordered the CMHA to arrange and pay for the forensic evaluation.
The CMHA did not follow the directives of the order, but intervened in the case to challenge the trial court's legal authority to order it to pay for the forensic examination. The CMHA argued that it was not the Department of Community Health for purposes of the Mental Health Code, and that the code contained no authorization to pay for forensic examinations of juveniles for the purposes of determining competency to stand trial or legal sanity. The trial court denied the CMHA's motion to modify the order, rejecting as illusory the CMHA's claim that it was not the same entity as the Department of Community Health.

C. Docket No. 240666
In Docket No. 240666, the sixteen-year old respondent had been involved with the family division of the circuit court since the age of eleven. In the instant proceedings, he was awaiting adjudication on two counts of first-degree criminal sexual conduct, two counts of second-degree criminal sexual conduct, and one count of malicious destruction of property over $1,000. In this case, his attorney moved the trial court for an order authorizing a forensic examination of him on the grounds that he had an IQ of 57, that he was diagnosed as an educable mentally impaired or mildly retarded student, and that he had been prescribed several behavioral or mood altering medications.
Like in the two other cases in these appeals, the court entered an order directing the CMHA to arrange for a forensic evaluation to determine whether the juvenile was competent to stand trial and whether he was legally insane at the time he committed the alleged offenses. The CMHA intervened and challenged the court's legal authority to enter the order. The court upheld the order on the same grounds as in Docket No. 240665.

II. Standard of Review
The issues present a question of the application of the law to the facts, which is reviewed de novo. People v. Barrera, 451 Mich. 261, 269 n. 7, 547 N.W.2d 280 (1996). Further, these cases involve statutory interpretation. Statutory interpretation is a *284 question of law that is reviewed de novo. People v. Law, 459 Mich. 419, 423, 591 N.W.2d 20 (1999). When interpreting a statute, the primary goal is to ascertain and give effect to the intent of the Legislature. People v. Joseph, 237 Mich.App. 18, 20, 601 N.W.2d 882 (1999).

III. Analysis

A. The Judicial Admission of a Mentally Retarded Juvenile to Mental Health Care
The first question we must determine is whether a trial court may judicially admit to a county mental health authority a mentally retarded juvenile who was found incompetent to stand trial and whose condition will not change within fifteen months of the competency hearing. We conclude that the Mental Health Code prohibits the judicial admission to mental health care of a mentally retarded juvenile who was determined incompetent to stand trial and whose condition will not improve.
The Mental Health Code provides procedures for determining the competency of adult criminal defendants. MCL 330.2020. Michigan has no statutory procedures expressly dealing with competency proceedings for juveniles. Rather, delinquency proceedings held in the family division of the circuit court are not considered to be criminal proceedings. In re Carey, 241 Mich.App. 222, 226, 615 N.W.2d 742 (2000). However, this Court held that "although the Mental Health Code provisions for competency determinations by their terms apply only to defendants in criminal proceedings, they can serve as a guide for juvenile competency determinations." Id.
We are sympathetic to the trial court's expressed frustration when it determined that none of the statutory provisions in the Mental Health Code has any application to juvenile competency proceedings. In Docket No. 240556, the court determined that the juvenile respondent was incompetent to stand trial and that he will never attain competency. The court properly relied on the decision in Carey, and looked to the criminal proceedings provided in the code for guidance. Keeping in mind the Carey directive that "the express language of the [Mental Health Code] may limit the specific procedures used," Carey, supra at 234, n. 3, 615 N.W.2d 742, the only provision in the Mental Health Code that may provide the best guidance under the circumstances in this case is the provision that governs the procedures a court must follow for an incompetent adult whose condition is not expected to improve within fifteen months of the competency hearing. Specifically, MCL 330.2031 provides:
If the [adult] defendant is determined incompetent to stand trial, and if the court determines that there is not a substantial probability that, if provided a course of treatment, he will attain competence to stand trial within the time limit established by section 1034 [15 months], the court may direct a prosecuting attorney to file a petition asserting that the defendant is a person requiring treatment as defined by section 401 [MCL 330.1401] or meets the criteria for judicial admission as defined by section 515 [MCL 330.1515] with the probate court of the defendant's county of residence.
In these cases, the court could not resort to the directives of MCL 330.1401 because that provision of the Mental Health Code concerns only the mentally ill, and not the mentally retarded. MCL 330.1515, meanwhile, specifically provides the criteria for the judicial admission to mental health care of adults diagnosed with mental retardation, as follows:
A court may order the admission of an individual 18 years of age or older who meets both of the following requirements:

*285 (a) Has been diagnosed as an individual with mental retardation.
(b) Can be reasonably expected within the near future to intentionally or unintentionally seriously physically injure himself or herself or another person, and has overtly acted in a manner substantially supportive of that expectation. [MCL 330.1515 (emphasis added).]
MCL 330.1515 is part of Chapter 5 of the Mental Health Code, which governs the civil admission and discharge procedures for persons with developmental disabilities including mental retardation. MCL 330.1500 et seq. Section 502 of the code expressly provides that "[a]n individual shall be admitted to a center only pursuant to the provisions of this act." MCL 330.1502 (emphasis added). Thus, it is clear that MCL 330.1515 expressly limits judicial admission to adults only. Importantly, the act expressly prohibits the judicial admission of a minor to mental health care, as follows:
An individual under 18 years of age shall not be judicially admitted to a center, facility, private facility, or other residential program. [MCL 330.1503(1) (emphasis added).]
Although a court may judicially admit a mentally retarded adult to mental health care, Chapter 5 of the Mental Health Code does not provide an exception for the judicial admission of mentally retarded juveniles. Rather, the act details the administrative procedures under which a juvenile may be administratively admitted to a mental health center. The procedures require a referral by a community mental health services program, an application submitted by a parent, guardian, or a person in loco parentis, and a preadmission examination by a center to determine whether the person is suitable for admission. MCL 330.1508-330.1510. Thus, it is clear that the Legislature, in enacting the provisions of the civil admission of mentally retarded persons, intended that juveniles not be judicially admitted under any circumstances similar to those in these cases. We conclude that Chapter 5 of the Mental Health Code comports with the legislative intent to leave it to the parents of a mentally retarded juvenile and to the qualified mental health professionals to follow the specific statutory procedures for admission. Thus, the trial court in this case was not allowed to disregard the clear directives of the act and judicially admit the juvenile to mental health care.
The trial court's written opinion clearly establishes the court's frustration with the fact that it was without legislative directive to assist the juvenile whom the court determined was in need of mental health care and treatment. As the court stated:
Since [the juvenile] is incompetent to stand trial, this Court cannot, under the Juvenile Code, order him to go to a treatment center; cannot place him on probation; cannot order him into a foster home; cannot order his parents to abide by certain court orders; and in essence cannot do anything except release him to his home with conditions of bond.
We are sympathetic to the trial court's frustration over the absence of legislative directive with respect to procedures for conducting and resolving competency matters for juveniles.[3] We commend the court for its careful consideration of the *286 language of the Mental Health Code and its efforts to provide the juvenile with treatment and care in keeping with the spirit of the code. Nonetheless, "`[i]t is the function of the court to fairly interpret a statute as it then exists; it is not the function of the court to legislate.'" People v. Jahner, 433 Mich. 490, 501, 446 N.W.2d 151 (1989) (citation omitted). We conclude that the court was not allowed to expand on the express language of the code.

B. The Arrangement and Costs for Competency Examinations
The next question presented is whether a trial court may order a county community mental health authority to arrange and pay for forensic examinations to determine whether a juvenile is competent to stand trial. We conclude that it may not.
Here, the court relied on the decision in Carey, and looked to MCL 330.2026(1) for guidance to secure forensic evaluations to determine the competency of the juveniles to stand trial. MCL 330.2026(1) provides:
Upon a showing that the defendant may be incompetent to stand trial, the court shall order the defendant to undergo an examination by personnel of either the center for forensic psychiatry or other facility officially certified by the department of mental health to perform examinations relating to the issue of incompetence to stand trial....
From the language of the above provision, the court was authorized to enter an order for a forensic examination only under one of two circumstances: (1) an examination conducted by the center for forensic psychiatry, or (2) an examination conducted by any other facility that is officially certified by the Michigan Department of Community Health, formerly the Department of Mental Health.[4]
In these cases, the trial court concluded that the Department of Community Health and the CMHA were, for all practical matters, one and the same, and it directed the competency order to the CMHA. The court misinterpreted the statute.
"The Legislature may be presumed to have intended a meaning that is clearly expressed and to have intended that every word and section be given effect." People v. Smith, 423 Mich. 427, 441, 378 N.W.2d 384 (1985). Further, we must presume that "the Legislature was aware of the meaning of the language it used in the Mental Health Code." Carey, supra at 232, 615 N.W.2d 742 (citation omitted). According to MCL 330.1100a(13), a "community mental health authority" means "a separate legal public governmental entity created under section 205 [MCL 330.1205] to operate as a community mental health services program." Specifically, a community mental health authority is a legal entity created by a county through an enabling resolution adopted by the county's board of commissioners. MCL 330.1205(1). In contrast, the Department of Community Health, formerly known as the Department of Mental Health, is a state department within the executive branch established "by section 400 of Act No. 380 of the Public Acts of 1965." MCL 330.1102; see also MCL 16.500. We conclude that the court erred when it determined that the CMHA and the Department of Community Health were one and the same, and when it subjected the CMHA to the order without determining whether the CMHA was officially certified by the Department of *287 Community Health to perform forensic examinations.[5]
Because the trial court determined that the CMHA was, for all purposes, the same as the Department of Community Health, the court rejected the CMHA's argument that its contractual obligations did not allow it to arrange and pay for the forensic examinations of the juveniles. We find nothing in the statute that grants the court the authority to order a community mental health authority to pay for the expenses of forensic examinations conducted by the center for forensic psychiatry or any other third party facility that is officially certified by the Department of Community Health. We also cannot find anything in the statute that allows a community mental health authority to make arrangements for forensic evaluations with a third party upon a court's order. We conclude that the court was without authority to order the CMHA to arrange and pay for the forensic evaluations.
In light of the above analysis, we need not address the CMHA's claim that the trial court violated the Michigan Constitution.
Reversed.
NOTES
[1] According to MCL 330.1100b(15), "mental retardation" means "a condition manifesting before the age of 18 years that is characterized by significantly subaverage intellectual functioning and related limitations in 2 or more adaptive skills...."
[2] In re Carey, 241 Mich.App. 222, 615 N.W.2d 742 (2000).
[3] We note that, in In re Carey, supra at 234 n. 4, 615 N.W.2d 742, this Court extended an invitation to "our Supreme Court to promulgate rules of procedure for juvenile competency determinations, and our Legislature to enact any statutory provisions it deems necessary."
[4] By Executive Reorganization Order No.1996-1 the Department of Mental Health was renamed the Department of Community Health. MCL 330.3101.
[5] It is unclear whether the trial court could have referred the minors to the center for forensic psychiatry. As this Court has noted, the center has limited statutory powers that do not include the examination of minors who have not been criminally charged as an adult with a crime. Carey, supra at 233 n. 3, 615 N.W.2d 742.