# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ANEESAH JEWEL POLLARD, Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

      Petitioner-Appellee,

v

ANEESAH JEWEL POLLARD,

      Respondent-Appellant.

UNPUBLISHED
October 26, 2017

No. 333171
Wayne Circuit Court
Family Division
LC No. 13-513633-DL

---

Before: BORRELLO, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent appeals by right an April 19, 2016, circuit court order revoking her in-home probation and referring her to Wayne County Children and Family Services for juvenile placement and care. For the reasons set forth in this opinion, we affirm.

## I. FACTS

On March 12, 2016, the trial court held a preliminary hearing and authorized a petition, alleging two counts of domestic violence by respondent against respondent's mother and respondent's brother. At the preliminary hearing, petitioner informed the court that respondent had been involved in two prior adjudications and was previously dismissed from court supervised probation on December 8, 2015. Respondent's mother informed the court that respondent was prescribed medications for her diagnosed conditions of depression, oppositional defiant disorder, and mood disorder. Respondent's mother further stated that respondent had stopped taking her medications after she was released from probation on December 8 and that she "needs mental health services and she needs placement."

At the April 4, 2016 hearing, respondent agreed to plead to one count of domestic violence in exchange for petitioner's dismissal of the other count. The trial court explained to respondent that the court had jurisdiction over her and would order a disposition that would "keep [respondent] safe, move [respondent] towards becoming a happy, healthy productive member of society and give [respondent] permanence." The court told respondent, "We try and do this in the home but if that's not possible then it's off to the crowbar hotel you go." The court

-1-

further explained to respondent, "If the court does a disposition and it doesn't' work [and] it doesn't keep you safe and move you towards where you need to go then I'm supposed to try again but be more vigorous." The court then informed respondent of the prosecutor's burden of proof, as well as respondent's rights to an attorney, to trial, to remain silent, to confront her accusers, and to appeal. The court further explained:

> [I]f you plead to one of the charges, you plead guilty and then support that with sufficient facts for me to believe you did this I'm going to place you on intensive probation where you'll meet with a lot of workers, they'll watch you very closely. I'm planning on doing this in not your mom's home, not your dad's home, but in your grandma's home.

> * * *

> [Respondent], her job is to keep you safe, move you towards becoming a happy, healthy productive member of society and to give you permanence.

> If you make this plea and support it with sufficient facts for me to believe you did it you're not going to have a trial of any kind. So you'll be giving up rights that would have been present at trial, including your rights to a trial by jury or a trial by judge if you don't want a trial by jury; your right to be presumed innocent until proven guilty, your right to have your guilt proved by proof beyond a reasonable doubt, your right to have witnesses against you appear in court so you can confront them and your attorney can cross-examine them. You'd be giving up your right to have the court order any witnesses in your defense appear at trial so they can give testimony you feel would be beneficial to your case. You'd be giving up your right to remain silent and not have your silence used against you. *Finally, you'd be giving up your right to testify at trial if you wanted to testify at trial.* [Emphasis added.]

Respondent stated that she understood the consequences of her plea and that she was giving up the rights that the court referenced. Respondent then admitted to one count of domestic violence.

Respondent's counsel then questioned respondent about the facts of the underlying domestic violence offense:

*Q*: [Respondent], on March 12, 2016 were you in the city of Detroit?

*A*: Yes.

*Q*: The County of Wayne?

*A*: Yes.

*Q*: Did you assault and batter one Jeanine Pollard?

*A*: Yes.

*Q*: Did you know it was wrong?

*A*: Yes.

*Q*: But you did it anyway?

*A*: Yes.

The court accepted respondent's plea after finding that it was understanding and accurate, and had been voluntarily made. "The allegations in the petition were substantiated," the court concluded. The second count of domestic violence was "dismissed with prejudice." The court placed respondent on intensive in-home probation (referred to as "regular probation level 1") in the home of her paternal grandmother.

On April 18, 2016, petitioner filed a supplemental violation of probation petition, which was authorized by the trial court on April 19, 2016. At the April 19, 2016 hearing concerning respondent's violation of probation, the trial court explained to respondent that if the violation of probation petition was proved, the court would then need to be "more vigorous" in its disposition. The court then informed respondent of her rights.

Keisha Render, the probation case manager assigned to respondent's case, testified that respondent had been having problems with her behavior during the two weeks she was on probation. Render testified that respondent "had quite a few issues in the home of her grandmother as far as how she responds to rules, communicates her concerns, and then acting out in an aggressive manner." Render stated that respondent had been extremely argumentative with her grandmother and also attempted to harm herself. Render also stated that respondent was involved in an incident where she grabbed a knife during an argument with her father. Render testified that respondent had been suspended from school for failing to attend class. Render further testified that respondent's grandmother and mother were both unable to "manage" respondent, and placing respondent with her father was not an option because respondent's father had been convicted of criminal sexual conduct. Render stated that respondent had psychiatric and emotional needs that required mental health services, but mental health services had not been set up or provided to respondent during the two weeks she was on probation.

The trial court found that respondent had violated her probation and on April 19, 2016, the court entered an order requiring respondent to be placed on "level two probation with psychiatric services."[1] This appeal ensued.

## II. ANALYSIS

### i. WITHDRAWAL OF PLEA

---

[1] The order provides that the "level two probation" is out-of-home probation or juvenile placement with Wayne County Children and Family Services.

Respondent argues that she should be afforded the opportunity to withdraw her plea of admission because she contends that the trial court did not properly advise her of the consequences of her plea and because the court failed to establish a proper factual basis for the plea. In relation to the trial court's acceptance of the plea, we review de novo the court's legal conclusions, while factual findings are reviewed for clear error. *People v Shaw*, 315 Mich App 668, 671-672; 892 NW2d 15 (2016).

Respondent contends that the trial court failed to advise her of the consequences of her plea of acceptance. This argument lacks merit.

MCR 3.941(A) governs the procedure for accepting a juvenile plea and provides that "[a] juvenile may offer a plea of admission or of no contest to an offense with the consent of the court. The court shall not accept a plea to an offense unless the court is satisfied that the plea is accurate, voluntary, and understanding." To ensure that a juvenile understands the plea, MCR 3.941(C)(1) directs the court to inform the juvenile of several things before accepting the plea including the offense charged and the "the possible dispositions. . . ." With respect to "possible dispositions" resulting from the plea, MCL 712A.18(1) authorizes the trial court to enter a variety of orders with respect to a juvenile, including:

> (a) Warn the juvenile or the juvenile's parents, guardian, or custodian and, except as provided in subsection (7), dismiss the petition.

> (b) Place the juvenile on probation, or under supervision in the juvenile's own home or in the home of an adult who is related to the juvenile. . . .

> * * *

> (d) . . . [P]lace the juvenile in or commit the juvenile to a private institution or agency approved or licensed by the department's division of child welfare licensing for the care of juveniles of similar age, sex, and characteristics. . . .

> (e) . . . [C]ommit the juvenile to a public institution, county facility, institution operated as an agency of the court or county, or agency authorized by law to receive juveniles of similar age, sex, and characteristics. . . .

In this case, before accepting the plea, the trial court addressed respondent as follows:

> [I]f you plead to one of the charges, you plead guilty and then support that with sufficient facts for me to believe you did this I'm going to place you on intensive probation where you'll meet with a lot of workers, they'll watch you very closely. I'm planning on doing this in not your mom's home, not your dad's home, but in your grandma's home.

The court further stated, "We try and do [probation] in the home but if that's not possible then it's off to the crowbar hotel you go." "If the court does a disposition and it doesn't' work [and] it doesn't keep you safe and move you towards where you need to go," the court explained to respondent, "then I'm supposed to try again but be more vigorous."

-4-

Respondent argues that this did not adequately inform her of the possible consequences of her plea. However, although the court did not quote the language of MCL 712.18(1) when describing the possible dispositions to respondent, the court did provide the necessary information to apprise respondent of the potential consequences of her plea. When the court told respondent that it would first try to order probation "in the home," the court was referencing the possible disposition identified in MCL 712A.18(1)(b). Furthermore, it is reasonable to conclude that when informing respondent that if the in-home probation was "not possible" or "doesn't work," the court would be more "vigorous" and order respondent to the "crowbar hotel," the court was referring to probation at a private or public institution as provided for under MCL 712A.18(1)(d) and (e). Thus, although the language could have been more precise, the court reasonably conveyed to respondent the potential consequences of her plea and respondent testified that she understood the court's explanation. Respondent has not shown error.

Respondent next argues that the trial court failed to advise her that she was giving up her right to testify at trial, as required by MCR 3.941(C)(1)(c)(ix). However, the trial court did inform respondent that she was relinquishing her right to testify when it informed her that, "you'd be giving up your right to testify at trial if you wanted to testify at trial." Respondent's argument is devoid of merit.

Next, respondent argues that the trial court failed to establish an adequate factual basis for her plea, and claims that her counsel's questioning her as to the facts of the offense was insufficient to establish the elements of domestic violence. We disagree.

MCR 3.941(C)(3) requires the trial court to establish "support for a finding that the juvenile committed the offense" before it accepts a juvenile's plea of admission. The relevant criminal statute, MCL 750.81(2), states as follows:

> [A]n individual who assaults or assaults and batters his or her spouse or former spouse, an individual with whom he or she has or has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household, is guilty of a misdemeanor . . . .

Respondent's counsel's questioning established that respondent assaulted her mother, a member of respondent's household, and that she knew it was wrong. Therefore, respondent has failed to establish that the trial court erred in finding a factual basis for her plea pursuant to MCR 3.941(C)(3).

In sum, the trial court complied with the plea taking procedures and respondent is not entitled to withdraw her plea.

## ii. INEFFECTIVE ASSISTANCE OF COUNSEL

-5-

Respondent argues that trial counsel was ineffective for failing to investigate and pursue a challenge to her competency. Alternatively, respondent requests that this Court remand to the trial court for a *Ginther*[2] hearing.

A defendant's claim to ineffective assistance of counsel "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d (2002). "Generally, this Court reviews findings of fact for clear error and questions of law de novo." *Id.* Because respondent did not move for a *Ginther* hearing in the lower court, this issue is not preserved and our review is limited to errors apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

To establish ineffective assistance of counsel following a plea bargaining process, respondent must show "that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citations omitted). "In demonstrating prejudice, the defendant must show the outcome of the plea process would have been different with competent advice." *Id*. (quotation marks and citations omitted).

Respondent argues that her trial counsel was ineffective because he failed to investigate and pursue a challenge to her competency before she accepted the plea. MCL 330.2020(1) provides as follows:

> A defendant to a criminal charge shall be presumed competent to stand trial. He shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner. The court shall determine the capacity of a defendant to assist in his defense by his ability to perform the tasks reasonably necessary for him to perform in the preparation of his defense and during his trial.

Challenges to competency can "be raised at any time during the proceedings against the defendant." MCR 6.125(B). However, in order to raise a competency issue there must be evidence of incompetence. *People v Blocker*, 393 Mich 501, 508; 227 NW2d 767 (1975).

Respondent asserts that trial counsel should have "investigated" her competency; however, trial counsel had the benefit of the psychological evaluation conducted by the Clinic for Child Study. The evaluation reported that respondent had various mood disorders and intellectual functioning in the low to average range. However, a defendant suffering from mental illness may nonetheless be competent to stand trial. *Indiana v Edwards*, 554 US 164, 178; 128 S Ct 2379; 171 L Ed 2d 345 (2008). Furthermore, respondent does not assert any irregularity with the report that would have altered counsel to the need to seek additional medical testimony. Indeed, respondent's testimony showed that she was aware of the factual circumstances

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

surrounding the domestic violence offense and that she repeatedly told the court that she understood the rights explained to her. In addition, respondent's mother and father did not express any concern regarding respondent's competency.

In sum, respondent does not identify anything in the record to support that trial counsel should have conducted further investigation into respondent's competency. Accordingly there are no mistakes apparent on the record and respondent is not entitled to a *Ginther* hearing or a new trial on the basis of ineffective assistance of counsel. *Douglas*, 496 Mich at 592.

### iii. PROBATION HEARING/DISPOSITIONAL ORDER

Respondent argues that the trial court abused its discretion when it conducted a violation of probation hearing two weeks after respondent was placed on probation. Respondent also argues that the trial court failed to articulate its reasons for imposing a level two probation and that the court's disposition was not authorized by MCL 712A.18. We disagree.

We review a trial court's order of disposition for an abuse of discretion. See *People v Brown*, 205 Mich App 503, 504-505; 517 NW2d 806 (1994); *In re Ricks*, 167 Mich App 285, 295; 421 NW2d 667 (1988).

Respondent first argues that the trial court erred when it held a violation of probation hearing only two weeks after placing respondent on probation because two weeks was not enough time for the probation officer to put mental health services in place for respondent, services the court knew were necessary. However, MCR 3.944(1) provides that a court may direct a juvenile to appear for a hearing "[u]pon receipt of a sworn supplemental petition alleging that the juvenile has violated any condition of probation." Here, petitioner filed such a petition following a physical altercation involving respondent and her father and the trial court was authorized in directing respondent to appear for a hearing. Moreover, MCR 3.944 does not state that there are any limitations as to when a violation of probation hearing may be held in relation to the date of the original probation order. The trial court did not abuse its discretion when it held the hearing.

Respondent also argues that the trial court failed to articulate its reasons for its dispositional order.

A trial court should "articulate on the record the reasons for [its] disposition of the case." *In re Chapel*, 134 Mich App 308, 315; 350 NW2d 871 (1984). In this case, the trial court articulated its rationale on the record. Specifically, respondent's probation case manager, Keisha Render, testified that respondent had been having problems with her behavior during the two weeks she was on probation. Render testified that during this period, respondent had been argumentative, failed to follow rules, attempted to harm herself, grabbed a knife in an argument with her father, and had been suspended from school. Before ordering a level two probation (an eventuality the court had previously warned respondent of), the trial court stated that it believed respondent could "rise far above what would otherwise be [her] limitations if [she] can learn to control [her] anger." Although not extensive, it is apparent that the court considered Render's testimony and its observations sufficiently articulated that the court's rationale for the disposition

was to take corrective measures to ensure that respondent overcame her limitations.  There was no error warranting relief.

Finally, respondent argues that the trial court's disposition, "level two probation," is not authorized by MCL 712A.18.  This argument lacks merit.  The out-of-home order of disposition indicates that respondent was "REFERRED TO [Wayne County Children & Family Services] FOR PLACEMENT (SUITABLE) AND CARE, PROBATION LEVEL 2 OUT OF HOME."  This is a disposition consistent with, and thus authorized by, MCL 712A.18(1) (authorizing committing "the juvenile to a public institution, county facility, institution operated as an agency of the court or county, or agency authorized by law to receive juveniles of similar age, sex, and characteristics").  The trial court did not abuse its discretion in entering the dispositional order.

Affirmed.

/s/ Stephen L. Borrello
/s/ William B. Murphy
/s/ Amy Ronayne Krause