# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* CHRISTOPHER ROSS, JR., Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

      Petitioner-Appellee,

v

CHRISTOPHER ROSS, JR.,

      Respondent-Appellant.

UNPUBLISHED
August 21, 2018

No. 331096
Oakland Circuit Court
Family Division
LC No. 2014-826056-DL

---

Before: SWARTZLE, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order of disposition placing him on in-home probation following a bench trial at which he was adjudicated responsible on one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e (sexual contact by force or coercion). After filing his appeal, respondent moved for an evidentiary hearing regarding his allegations that his trial counsel, Daniel Randazzo, was ineffective. See *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). This Court granted respondent's motion and, after a lengthy evidentiary hearing, the trial court rejected most of respondent's claims but did conclude that Randazzo was ineffective for failing to admit certain telephone records at trial. Thus, the trial court concluded that respondent was entitled to a new trial. For the reasons discussed below, we reverse and remand for reinstatement of the trial court's initial adjudication and order of disposition.

## I. FACTS

Respondent was a high school student. On November 20, 2014, he admittedly engaged in sexual activity with a 16-year-old classmate in the hallway of their school. The complainant testified that respondent forcibly assaulted her, while respondent claimed that the encounter was consensual. No one witnessed the incident. After a bench trial, at which respondent was represented by Randazzo, the trial court found the complainant credible, and entered an order adjudicating respondent responsible on one count of CSC-IV.

Randazzo filed a motion for a new trial, which was denied. Respondent then obtained new counsel, who filed a second motion for a new trial. This motion raised a wide variety of claims, all alleging that Randazzo provided ineffective assistance of counsel. The trial court rejected the motion, finding it to be a disguised motion for reconsideration of the first motion for a new trial. Respondent then filed a claim of appeal in this Court, and a subsequent motion seeking remand for an evidentiary hearing. This motion identified three areas in which respondent felt Randazzo was ineffective, omitting several other areas that were identified by respondent in his second motion for a new trial. On July 21, 2016, this Court granted the motion, and remanded the matter to the trial court for an evidentiary hearing. This Court's order stated, "Proceedings on remand are limited to the issues as raised in the motion to remand." *In re Christopher Ross, Jr*, unpublished order of the Court of Appeals, entered July 21, 2016 (Docket No. 331096).

The evidentiary hearing was extraordinarily lengthy and contentious. Respondent's counsel repeatedly tried to delve into issues that were raised in the second motion for a new trial, but not in respondent's motion to remand filed in this Court. Relying on this Court's remand order, the trial court repeatedly rejected respondent's attempts to expand the issues considered on remand. About a year after it began, the evidentiary hearing concluded with the trial court granting respondent a new trial. On appeal, the prosecutor argues that the trial court erred. Respondent contends that the trial court was correct to grant a new trial for the single reason cited by the trial court, and also that the trial court should have found Randazzo ineffective for other purported failures. Respondent further argues that he should have been permitted to present expert testimony from Jerome Sabbota regarding best practices in defending a CSC case, and that the trial court erred by limiting the scope of the hearing to those areas identified in respondent's motion to remand.

## II. STANDARD OF REVIEW

Claims of ineffective assistance of counsel present mixed questions of fact and constitutional law. *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016). Any factual findings by the trial court are reviewed for clear error, while the ultimate legal issue is reviewed de novo. *Id*. at 671-672. Clear error exists if "this Court is definitely and firmly convinced that the trial court made a mistake." *Id*. at 672.

"To prevail on a claim of ineffective assistance of counsel, a defendant bears a heavy burden to establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016). However, such performance must be evaluated without the benefit of hindsight, *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995), and the defendant must overcome a strong presumption that counsel's actions were based on reasonable trial strategy, *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007).

## III.  ANALYSIS

### A.  TELEPHONE RECORDS

The trial court's sole basis for granting respondent a new trial was its conclusion that Randazzo was ineffective for failing to present telephone records showing calls between a telephone belonging to Crystal Ross (Crystal), who is respondent's mother, and the complainant's telephone about the time the sexual encounter ended.  We conclude that Randazzo's decisions with regard to the telephone records were sound strategic decisions, and thus, cannot warrant a new trial.

When Randazzo was retained, the case had been ongoing and was approaching trial.  Respondent had already acknowledged that he had a sexual encounter with the complainant so the only issue to be litigated at trial was whether the encounter was consensual.  And because there were no witnesses, the trial was essentially a credibility contest between the complainant and respondent.

At some point before trial, Randazzo was told by Crystal and respondent that the complainant allowed respondent to use her telephone to call Crystal after the sexual encounter.  If true, this might support the claim that the encounter was consensual because it could indicate that the two were on good terms.  Crystal provided telephone records to Randazzo in an effort to support the claim.  The records are a statement of usage activity, taken from Crystal's online account with her cellular carrier.  Three calls, all at 4:31 p.m., are highlighted, and a handwritten note states that these calls were from the complainant's telephone to Crystal's telephone.  This handwritten note, however, was incorrect.  While the records go back at least an hour before the encounter, and continue after the encounter, they do not show any incoming calls from the complainant's telephone number to Crystal's telephone number.  Rather, the records only show three *outgoing* calls, placed by Crystal to the complainant's telephone, at 4:31 p.m.

With these records in hand, Randazzo accurately explained at the evidentiary hearing that he had nothing to support respondent's claim that the complainant allowed him to use her telephone to call Crystal.  And at trial, the complainant testified that she did not allow respondent to use her telephone after the encounter.  When respondent testified, it seems that he was viewing the records Crystal gave to Randazzo.  Respondent testified—in contradiction to the records— that he made three calls from the complainant's telephone, all at 4:31 p.m.  While the prosecutor objected on the basis that she had not received any telephone records in discovery, the trial court overruled the objection, explaining that Randazzo had not sought to introduce the records into evidence, but if he did, the objection could be renewed.  Randazzo never attempted to introduce the records that he had into evidence, instead relying on respondent's verbal testimony to support the theory that the complainant allowed respondent to use her telephone.

At the evidentiary hearing, Randazzo explained his strategy.  Randazzo wanted to create the impression that the complainant allowed respondent to use her telephone after the encounter.  Randazzo first questioned the complainant on cross-examination, and elicited her testimony that she did not allow respondent to use her telephone.  Having no records to back up respondent's claim that he used the complainant's telephone, Randazzo then questioned respondent regarding the calls while he viewed the records Randazzo did have.  Randazzo was essentially trying to

trick the prosecution and the trial court into believing that there were records substantiating that these calls took place. Of course, had the records been admitted, they would have shown that respondent's testimony was not supported by the records. Nonetheless, because of how Randazzo approached the issue, he was able to infer that documentary evidence supported respondent's testimony that the complainant allowed him to use her telephone, despite Randazzo having been provided no such evidence. At the same time, he was able to call the complainant's credibility into doubt.

Under the circumstances, respondent fails to overcome the presumption that Randazzo's performance was reasonable. Decisions regarding what evidence to admit are "presumed to be matters of trial strategy . . . ." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Respondent must overcome a strong presumption that Randazzo's strategy was sound. See *Cline*, 276 Mich App at 637. With the records that were available to him at the time, Randazzo did the best he could. By questioning respondent in the manner he did, but without introducing the records themselves and not providing those records to the prosecutor in discovery, Randazzo was able to imply that records existed that backed up respondent's testimony when none actually existed. He was also able to disguise this strategy from the prosecutor. We cannot find fault in how Randazzo approached the issue at trial, given what was available to Randazzo at the time. Indeed, had Randazzo offered the records he had into evidence at trial, which is primarily what respondent now argues was Randazzo's error, Randazzo would have made a strategic mistake. Randazzo would have presented records that failed to call the complainant's credibility into doubt, and at the same time, proved that respondent's testimony was false. In a case that was a pure credibility contest between the complainant and respondent, such an error would have been egregious.[1]

The twist in this case is that during the *Ginther* hearing, a representative from Crystal's cellular carrier, AT&T, provided more detailed internal records, and testified that a call was in fact placed from the complainant's telephone to Crystal's telephone at 4:24:59 p.m. For reasons unexplained, this call is not included in the records Crystal provided to Randazzo. Knowing this to be the case, is respondent entitled to a new trial?

We answer that question in the negative. Randazzo's performance cannot be assessed with the benefit of hindsight. See *LaVearn*, 448 Mich at 216. This Court must "evaluate defense counsel's performance from counsel's perspective at the time of the alleged error and in light of the circumstances." *People v Grant*, 470 Mich 477, 487; 684 NW2d 686 (2004). The real question in this matter is one left largely, if not entirely, unaddressed by respondent on appeal: should Randazzo have performed any additional investigation into the question of respondent's use of the complainant's telephone?[2] "A sound trial strategy is one that is developed in concert

---

[1] Even though the more detailed records were available at the time of the *Ginther* hearing, respondent still maintained that he made three calls from the complainant's telephone at 4:31 p.m. when he testified at the *Ginther* hearing.

[2] Respondent's appellate brief generally fails to distinguish between the records Randazzo did have before trial, and those that were presented at the evidentiary hearing through AT&T's

with an investigation that is adequately supported by reasonable professional judgments." *Id*. at 486. An independent examination of the facts and circumstances must be undertaken. *Id*. at 486-487 (citation omitted). "This includes pursuing all leads relevant to the merits of the case." *Id*. at 487 (quotation marks and citation omitted). "Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation[.] Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 485 (quotation marks, brackets, and citation omitted).

In this case, Randazzo testified to why he did not perform any additional investigation into the telephone records before trial. First, he explained that he was given the records by Crystal that did not support respondent's claims. Having these records, Randazzo saw no reason to investigate further. The records came from AT&T's online account statement for Crystal's telephone. Under these circumstances, it was reasonable for Randazzo to conclude that further investigation was not necessary. The records appeared complete. No one has explained precisely why the one call that was actually initiated from the complainant's telephone does not appear on the account statement, and no one has explained why Randazzo should have questioned the accuracy of the records he was provided.

Second, Randazzo did not view the call, even if it was made, as particularly important. Even presuming the call occurred, it did not prove that the encounter was consensual. It was equally possible that respondent took the complainant's telephone away from her without her consent, or that she allowed him to use the telephone out of fear, given that respondent had just sexually assaulted her by force. Certainly, it is understandable that Randazzo would not want the complainant to testify to either of these scenarios. Thus, while evidence of the call had some potential to assist respondent's case, it could also substantially harm it, depending on how the complainant explained the call. By proceeding as he did, Randazzo avoided any additional damaging testimony from the complainant regarding how respondent came to use her telephone.

Third, and perhaps of less importance, Randazzo explained that no mention of the call was made in the police report or in other statements provided to him by respondent and Crystal. Rather, it was shortly before trial that this information was provided. Given the evidence Randazzo was provided, the possible harm that could come from presenting evidence that a call was made, as well as the time constraints, we cannot fault Randazzo for failing to dig any deeper into the issue and subpoena records from AT&T. "Defense counsel is given wide discretion in

representative. Respondent chastises Randazzo for failing to understand how to admit telephone records at trial. There is no evidence that Randazzo did not understand how to admit telephone records; rather, as explained, the record shows that he had very sound strategic reasons for not admitting the records he did have in his possession at respondent's trial. Respondent also suggests that Randazzo did not know how to subpoena telephone records. Again, no record evidence supports this claim. Rather, as is discussed below, Randazzo exercised reasonable professional judgment under the circumstances and concluded that no further investigation was necessary.

matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Randazzo made a strategic decision regarding how to proceed, choosing to take certain risks instead of others. That his strategic decisions did not ultimately win the day does not mean that his strategy was unreasonable. See *People v Williams*, 240 Mich App 316, 332; 614 NW2d 647 (2000).

The trial court failed to address Randazzo's strategic reasons for proceeding as he did. The trial court held that it was objectively unreasonable for Randazzo not to admit the telephone records at trial, but the court did not acknowledge the fact that the telephone records Randazzo had in his possession at that point did not support respondent's case. The trial court's analysis with regard to what happened at trial is flawed for the reasons discussed. And with regard to whether Randazzo should have subpoenaed any records from AT&T, the trial court simply explained that the records could have been obtained and authenticated at trial through an appropriate witness, as was done during the *Ginther* hearing. Certainly, this *could* have been done. But the question for the trial court was whether Randazzo's decision not to undertake any additional investigation was a reasonable professional judgment considering the specific facts and circumstances at the time he made the decision. See *Grant*, 470 Mich at 485-487. For the reasons discussed, we conclude that Randazzo's failure to conduct any additional investigation into this specific area was a reasonable exercise of professional judgment. Accordingly, respondent failed to show that Randazzo's performance was objectively unreasonable, and is not entitled to a new trial. See *Solloway*, 316 Mich App at 188.

## B. OTHER CLAIMS THAT RANDAZZO WAS INEFFECTIVE

Respondent argues that, aside from Randazzo's failure to present telephone records at trial, he was ineffective for all of the reasons rejected by the trial court. Specifically, he contends that Randazzo was ineffective for: (1) failing to file a witness list, (2) failing to call several witnesses to testify at trial, and (3) failing to obtain a pretrial polygraph under MCL 776.21(5). We disagree.

First, respondent is not entitled to relief on his claim that Randazzo was ineffective for failing to file a witness list. While Randazzo could be faulted for failing to file a witness list, this failure did not result in any prejudice to respondent. After Randazzo discussed the situation with the prosecutor, the prosecutor explained that none of the witnesses counsel intended on calling were a surprise, and thus, the prosecutor would not seek any relief as a result of Randazzo's mistake. In short, this mistake had absolutely no effect on the trial. Because relief is only warranted where there is a reasonable probability that counsel's error or errors affected the outcome of trial, no relief is warranted. See *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

Respondent's arguments that Randazzo was ineffective for failing to investigate or call certain witnesses are also without merit. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). "Furthermore, the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). In this

case, respondent argues that several witnesses should have been called to bolster his consent defense. Randazzo raised this exact defense throughout respondent's trial. It was identified by Randazzo in his opening statement as the primary issue to be decided. Randazzo cross-examined the complainant on the issue of consent, and attempted to attack her credibility. He presented respondent's own testimony as the primary source of support for the defense, and then argued in closing that respondent should be believed. The failure to call other witnesses to provide additional testimony cannot, under the circumstances, warrant a new trial. See *id*. ("The record reveals that defense counsel raised the defense of consent through her cross-examination of the complainant, and sought to bolster that defense by attacking her credibility. Defense counsel bolstered this theory in closing argument. As the defense of consent was actually raised, defendant's contention is without merit.").

And further, none of the witnesses respondent argues should have been called had much, if anything, to offer. Respondent first argues that Randazzo should have called respondent's brother, Conner Ross (Conner), to testify about "prior, similar, false allegations" of sexual assault levied against Conner by the complainant, which respondent contends would have "directly impacted" the complainant's credibility. Simply put, there was no prior, similar, or false accusation. The complainant apparently felt uncomfortable during a physical encounter with Conner that Conner acknowledged occurred, and for which Conner apologized. The trial court did not find that this evidence would have altered the result of the trial. Given that the evidence was not of a false accusation at all, we find no fault with that assessment, or with Randazzo's decision not to call Conner to testify.

Respondent argues that Ariel Crumes, another student at respondent's school, could have testified: (1) that the complainant was romantically interested in respondent and wanted to send "slutty" photographs to him earlier in November 2014; (2) that the complainant was in a good mood when she returned from a 10 to 20 minute absence from her workout on November 20, 2014; and (3) that after Crumes spoke with the complainant in the days or weeks after the incident, she thought the complainant was not telling the truth and wanted to change her story. The trial court found that Crumes was not credible, a determination that is entitled to great deference. See *People v Farrow*, 461 Mich 202, 208; 600 NW2d 634 (1999). Respondent fails to address the simple fact that the trial court did not believe Crumes's testimony. Obviously, if Crumes's testimony would not have been believed, it would not have changed the outcome of the trial.

Further, Randazzo explained why Crumes was not called to testify. Although Crumes had, at one point, indicated that the complainant had recanted or repudiated the allegations against respondent, Crumes later stated that she had been coerced into making such claims. Crumes indeed testified at the hearing that Crystal pressured her into writing a statement. Crumes's written statement also indicated that she did not have any knowledge of what occurred between respondent and the complainant. Given those circumstances, it is reasonable that Randazzo would not want to call Crumes to testify. Even if believed, Crumes had little to offer to assist respondent. Calling her to testify could have opened the door for the prosecutor to present evidence that Crumes was coerced by Crystal, evidence that would have undermined Crumes's credibility, and also casted a poor light on respondent and his family.

Further, Randazzo's assessment of Crumes's potential testimony was quite accurate. Crumes did not, as respondent insists, testify that the complainant recanted her allegations. Rather, Crumes testified that, in part because of Crystal's insistence, she tried to talk to the complainant on multiple occasions about the incident. The complainant never recanted. Crumes simply speculated that the complainant wanted to change her story. With regard to what occurred on the day of the incident, Crumes wrote in her letter:

> On the day that the supposed rape happened [the complainant] came to lifting. She was really happy and excited to lift that day. It happened between 3-4 lifting with her. Lifting went on after 4 just a little bit because I was with her. She was really happy with herself and completing the workout.

> I do not believe [respondent] participated in the act being accused against him.

In other words, Crumes's position was that she was with the complainant the entire time and that nothing could have occurred between respondent and the complainant. But video shows respondent and the complainant together shortly before 4:00 p.m. and respondent fully acknowledged engaging in sexual activity with the complainant. Crumes's statement shows that she had no knowledge of the complainant's whereabouts during or after the sexual encounter between her and respondent.

Respondent argues that two other classmates, Trevor Muir and Cobe Bryant, could have provided important testimony, in that they could have testified that they did not see the complainant while respondent, Muir, and Bryant were running through the halls at the school. Respondent argues that this "important point" would have impeached the complainant's testimony, as the complainant testified that she saw respondent run past her once, and then he later stopped to talk to her. The trial court did not find Bryant or Muir credible, a decision not addressed by respondent on appeal. Further, respondent provided essentially the same testimony as the complainant when it came to how the two first met up. Like the complainant, respondent also explained that he saw the complainant once while he was running and that he later stopped running and ran into her, leading to their encounter. It is not unreasonable strategy to fail to present this testimony. All it would have shown is that Muir and Bryant did not notice the complainant while they were running, while respondent did. Nor is there any reason to think that the absence of this testimony would have affected the outcome of the trial.[3]

---

[3] Respondent suggests that Muir and Bryant would also have provided testimony consistent with respondent's timeline of events. Both Muir and Bryant testified that respondent ran with them and was absent from their view only for a period of seconds until the group finished running around 4:00 p.m. Muir and Bryant did not see the encounter between respondent and the complainant, and did not see respondent or the complainant after the encounter, which all agree did occur. Muir and Bryant indeed might have provided testimony consistent with respondent's timeline, but neither could have provided any testimony that would have been relevant to the sole question in this case: whether the sexual encounter was consensual.

Finally, respondent takes issue with the fact that Randazzo did not seek a pretrial polygraph. The trial court did seem to err in its opinion when it stated that the only question before the court was whether Randazzo was ineffective for failing to seek a post-trial polygraph, and that the question of whether Randazzo should have sought a pretrial polygraph was not before the trial court. As is discussed in detail later in this opinion, the remand proceedings were limited by this Court to those issues specifically raised by respondent's motion to remand. Respondent's brief in support of the motion to remand clearly took issue with the fact that Randazzo did not seek a pretrial polygraph under MCL 776.21(5), noting that by failing to do so, Randazzo "al[l] but eradicated the ability for [plea] negotiation or request for dismissal." In fact, the entire focus of the motion to remand, at least with regard to the polygraph, was whether counsel should have sought one before trial under MCL 776.21(5). However, the trial court nonetheless examined whether Randazzo acted reasonably by not requesting a polygraph examination before trial, and concluded that he did.

It is debatable whether respondent would have even been entitled to a polygraph under MCL 776.21(5). The statute states that a "defendant" is entitled to a polygraph. Respondent was not a defendant; he was a respondent in a juvenile delinquency proceeding. We are aware of no cases stating specifically that MCL 776.21(5) is or is not applicable in juvenile delinquency proceedings. "[J]uvenile cases are not criminal proceedings." *In re Carey*, 241 Mich App 222, 231; 615 NW2d 742 (2000). The argument could be made that the Legislature, for whatever reason, did not intend to extend the rights granted by MCL 776.21(5) to juveniles, as the Legislature chose to use the term "defendant," and nothing more. See *Carey*, 241 Mich App at 232-233 (refusing to apply provisions of the Mental Health Code, MCL 330.2020 *et seq.*, regarding competency examinations to juvenile delinquency proceedings because the statutes at issue referred specifically to defendants in criminal proceedings; however, those statutes could serve as a guide). Respondent does not make any argument explaining exactly how MCL 776.21(5) is applicable to delinquency proceedings, instead relying on the trial court's statements at the disposition hearing that indicated respondent could have availed himself of the statute. Respondent does not address the possibility that the trial court was simply incorrect.

However, it is arguable that MCL 776.21(5) is applicable to a juvenile delinquency proceeding. In *In re McDaniel*, 186 Mich App 696, 698; 465 NW2d 51 (1991), this Court held that through operation of MCR 1.104, which is itself applicable to juvenile delinquency proceedings through MCR 3.901(A)(1) and (B)(1), "the rules set forth in the Code of Criminal Procedure are applicable [to juvenile delinquency matters] unless they conflict with the rules of procedure for juvenile matters set forth in the court rules or in the Probate Code." MCL 776.21(5) is a part of the Code of Criminal Procedure. The parties cite no court rules or rules stated in the Probate Code with which MCL 776.21(5) would conflict. Accordingly, one could argue that MCL 776.21(5) applies to juvenile delinquency matters.

But Randazzo explained that he did not believe the statute was applicable in a juvenile delinquency matter. Given the lack of case law on the specific question, which seems subject to reasonable dispute, we conclude that counsel cannot be deemed ineffective for failing to seek a pretrial polygraph under MCL 776.21(5). See *People v Reed*, 453 Mich 685, 695; 556 NW2d 858 (1996) ("Before the Court of Appeals decision in this case, no Michigan authority had held that such an instruction can be given in this situation. Certainly, defense counsel's performance cannot be deemed deficient for failing to advance a novel legal argument.").

-9-

In any case, the trial court correctly concluded that Randazzo's choice not to obtain a pretrial polygraph was a matter of strategy, regardless of whether Randazzo believed respondent was entitled to request one under the statute. At the evidentiary hearing, Randazzo gave a number of reasons why a pretrial polygraph was not desirable in this case. Randazzo did not believe a polygraph would be useful because it would, at best, confirm respondent's subjective belief that the sexual encounter was consensual. But the true question in this case was whether the complainant consented to the encounter. Randazzo also explained that he would not recommend obtaining a polygraph through the statute without first obtaining a private polygraph, and that respondent's family's financial situation was not conducive to paying for a private polygraph. Further, Randazzo's experience was that the results of a private polygraph were not always consistent with those found by a state-administered polygraph examination. There were also risks to taking a state-administered polygraph; respondent might have made damaging admissions during such an examination. Nor did Randazzo think that a pretrial polygraph, even if passed by respondent, would have caused the prosecutor to dismiss the charges or negotiate a plea. Randazzo testified that in his experience, prosecutors were unlikely to consider a polygraph at the stage the case was in when Randazzo was retained. He also testified that in this particular case, the prosecutor was not amenable to dismissing the charges or negotiating a plea.

The trial court found Randazzo's testimony on the subject credible, and this testimony reveals several strategic and practical reasons for not seeking a polygraph before trial. Randazzo's decision not to seek a polygraph examination under the statute was a matter of reasonable trial strategy, and thus, the failure to obtain a pretrial polygraph cannot be considered ineffective assistance by Randazzo. See *Cline*, 276 Mich App at 637. Further, given that the prosecutor was not interested in dismissing the charges or negotiating a plea in this case, there was no prejudice to respondent. See *Solloway*, 316 Mich App at 188. Therefore, Randazzo's failure to seek a pretrial polygraph cannot be considered ineffective assistance of counsel.

## C. EXPERT WITNESS TESTIMONY

Respondent contends that the trial court abused its discretion by refusing to allow Sabbota to testify as an expert witness at the evidentiary hearing. We disagree. A trial court's decision regarding whether to admit or exclude expert witness testimony is reviewed for an abuse of discretion. *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007).

Before the evidentiary hearing in this matter, the prosecutor filed a motion seeking to exclude expert witness testimony respondent intended on presenting through Sabbota. According to respondent, Sabbota, had he testified, would have been asked to provide "general testimony as to past practices involving the Oakland County Prosecutor's Office and best practices for defense of" CSC cases. The prosecutor cited two cases, *In re Thurston*, 226 Mich App 205, 213 n 7; 574 NW2d 374 (1997), rev'd 459 Mich 923 (1998), and *People v Kowalski*, 492 Mich 106, 121; 821 NW2d 14 (2012), for the premise that the reasonableness prong of the ineffective assistance of counsel test was strictly a legal question to be decided by the trial court, and as such, was not a proper subject for expert witness testimony. Respondent answered the objection by contending that these two cases were not applicable and that in *Trakhtenberg*, 493

Mich at 53, our Supreme Court not only found it proper to rely on an expert to decide whether counsel was ineffective, but relied specifically on Sabbota's testimony regarding best practices in a CSC case to hold that counsel was ineffective in that matter.

It is true that in *Trakhtenberg*, our Supreme Court relied on Sabbota's testimony regarding how best to defend a CSC case to find that counsel's performance in that case was unreasonable. *Id*. And the cases cited by the prosecutor do not address claims of ineffective assistance of counsel. In *In re Thurston*, this Court found an attorney guilty of contempt for making false representations during argument of a criminal appeal. *In re Thurston*, 226 Mich App at 221, 231. This Court stated in a footnote that "what constitutes proper advocacy is a question of law and therefore not a proper subject of expert testimony." *Id*. at 213 n 7. Clearly, this Court was referring to appellate advocacy, not criminal trial practice. And in *Kowalski*, the issue was whether an expert should have been allowed to testify regarding the occurrence of false confessions; no ineffective assistance claim was discussed. *Kowalski*, 492 Mich at 110. Although the issue was not specifically litigated in *Trakhtenberg*, in light of our Supreme Court's reliance on Sabbota's testimony in that case, we cannot agree with the prosecutor's initial position that there is an absolute prohibition against expert witness testimony on the subject of the reasonableness of trial counsel's actions.

However, in a reply brief filed in the trial court, the prosecutor explained that in *People v Marshall*, 298 Mich App 607, 619; 830 NW2d 414 (2012), vacated in part on other grounds 493 Mich 1020 (2013), this Court concluded that a trial court did not abuse its discretion by precluding an expert witness from testifying at a *Ginther* hearing "regarding whether defense counsel's performance adhered to community standards and norms." In *Marshall*, this Court explained:

> Expert testimony is admissible under MRE 702 if the trial court determines that "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." In this case, the testimony was offered at a hearing at which the trial court acted as the trier of fact. The court found that the proposed testimony would not be helpful because it was "well aware of the community standards on this issue." The trial court appropriately evaluated the admissibility of the proposed testimony under MRE 702. Because the court was familiar with the facts of the case and the legal standards for evaluating an attorney's performance relative to a claim of ineffective assistance of counsel, its decision to exclude defendant's proposed expert testimony was within the range of reasonable and principled outcomes and, therefore, was not an abuse of discretion. [*Id*. at 619.]

Thus, it would seem fairly clear from *Trakhtenberg* and *Marshall* that there is no per se rule that expert testimony cannot be heard at a *Ginther* hearing. However, whether such testimony will ultimately be admitted is controlled by MRE 702. *Marshall*, 298 Mich App at 619.

In this matter, the trial court explained that Sabbota's testimony would not be helpful to deciding the questions presented before it on remand, particularly in light of the evidence that had been presented up to the time of the court's ruling, which was made fairly late in the evidentiary hearing. In other words, just as occurred in *Marshall*, the trial court concluded that

MRE 702 was not satisfied because the testimony would not have been helpful to the trial court. On appeal, respondent primarily argues that *In re Thurston* and *Kowalski* are not applicable. That is true, but fails to address the trial court's ruling.

In fact, respondent does very little to explain how Sabbota's testimony could have been helpful in this case, particularly when one considers that the trial court only had three specific areas before it in which Randazzo was alleged to have provided deficient assistance. Respondent initially contends that the court's ruling denied respondent the opportunity to develop a record regarding the polygraph question, as Sabbota would have testified that he would have sought a pretrial polygraph, either privately or through the applicable statute. However, respondent also contends that Sabbota would not have provided any testimony regarding what should have been done specifically in this case, but rather, would have provided testimony of generalities; in other words, of what generally should be done in any CSC case. As was discussed, whether Randazzo should have sought a polygraph turns on many considerations, all of which are specific to this case. Generalized assertions regarding ordinary practices would have been of little use to the trial court, which was tasked with determining whether Randazzo provided ineffective assistance to respondent in this particular case.

Respondent also suggests that the trial court's ruling prohibited respondent from providing testimony regarding the specialized knowledge needed to defend a CSC case, and "what *could* have been done[]" in this case. This vague argument fails to establish any reason why Sabbota's testimony would have been helpful to the trial court when it came to deciding the specific questions at issue in this case. As such, respondent fails to demonstrate any error warranting relief.

## D. SCOPE OF REMAND PROCEEDINGS

Finally, respondent contends that the trial court erred by limiting the scope of the remand proceedings to those areas identified by respondent in the motion to remand he filed in this Court. We disagree. "Whether a trial court followed an appellate court's ruling on remand is a question of law that this Court reviews de novo." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007).

This Court granted respondent's motion to remand in an order stating the following:

> The Court orders that the motion to remand pursuant to MCR 7.211(C)(1) is GRANTED and the matter is remanded so that respondent-appellant may conduct an evidentiary hearing in support of his second motion for a new trial based on ineffective assistance of counsel. The trial court shall rule on the motion after conducting the evidentiary hearing. *Proceedings on remand are limited to the issues as raised in the motion to remand.* [*In re Christopher Ross Jr*, unpublished order of the Court of Appeals, entered July 21, 2016 (Docket No. 331096) (emphasis added).]

This Court's remand order was exceptionally clear: the proceedings on remand were limited to the specific issues respondent chose to raise in the motion to remand filed in this Court. *Id.* "When a case is remanded by an appellate court, proceedings on remand are limited to the scope

of the remand order." *People v Canter*, 197 Mich App 550, 567; 496 NW2d 336 (1992). The trial court was correct to limit the scope of the remand proceedings to the three areas identified in respondent's motion to remand filed with this Court. This Court's order clearly limited the remand proceedings to those issues, and it would have been error for the trial court to allow respondent to present evidence or pursue claims beyond those specific areas. See *id*.

Reversed and remanded for reinstatement of the trial court's initial adjudication and order of disposition. We do not retain jurisdiction.


/s/ Mark J. Cavanagh
/s/ Michael J. Kelly